**SCHLUMBERGER WELL SURVEYING CORPORATION, Petitioner,**

v.

**NORTEX OIL AND GAS CORPORATION, Respondent.**

**No. B–443.**

Supreme Court of Texas.

Nov. 13, 1968.

Rehearing Denied Jan. 29, 1969.

Baker, Botts, Shepherd & Coates, Joseph C. Hutcheson, III and John F. Heard, Houston, for petitioner.

Fritz Lyne and Erich F. Klein, Jr., Dallas, Ralph Balasco, Houston, for respondent.

CALVERT, Chief Justice.

Nortex Oil & Gas Corporation sued Schlumberger Well Surveying Corporation for damages alleged to have been sustained as a result of a fraud practiced upon it by the sellers of certain oil and gas leasehold estates. Schlumberger was not one of the sellers of the leasehold estates and owned no interest therein; its liability was asserted on the ground that it had participated in a conspiracy to commit certain unlawful acts which made the fraud possible.

Trial was begun to a jury, but at the conclusion of Nortex's evidence, the trial judge withdrew the case from the jury and rendered judgment that Nortex take nothing. The court of civil appeals reversed the judgment of the trial court and remanded the cause for trial. 417 S.W.2d 603. We reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

This is primarily a "no evidence" case. The evidence in the record leaves little doubt that Nortex was the victim of a fraud perpetrated on it by the sellers of the leasehold estates. However, inasmuch as Schlumberger was not a party to the fraudulent transaction and its liability is asserted solely on the basis of a conspiracy, the first question to be decided is whether Nortex tendered admissible evidence at the trial which was legally suffi-cient to raise a fact issue as to Schlumberger's status as a conspirator. An incidental problem, argued by the parties, concerns admissibility of certain evidence tendered by Nortex but excluded by the trial judge. Holding the excluded evidence to be admissible, the court of civil appeals then held the evidence legally sufficient to raise fact issues as to Schlumberger's status as a conspirator and as to Nortex's loss being a natural and probable consequence of the conspiracy. For purposes of this opinion, we will also treat the excluded evidence as admissible, without so holding. Considering both the evidence introduced and that tendered by Nortex but excluded, we nevertheless conclude that it is not legally sufficient to raise a fact issue that Schlumberger was a conspirator. We do not reach other questions on which the parties join issue.

A summary of the evidence, viewed most favorably in support of Nortex's case, is in order. The facts to be recited are uncontroverted, or they are proved by direct evidence, or they could be reasonably inferred by a jury from other facts and circumstances in evidence.

In February and July, 1961, Nortex purchased certain interests in mineral leasehold estates in producing leases in Rusk and Gregg Counties from Ebro Oil Company, Inc., Burk Royalty Company and other owners. Nortex was furnished data showing that all of the oil being produced from the leases was legally produced, and it had no reason to believe otherwise. When the East Texas "slant hole" scandal broke in 1962, it was discovered that a number of the producing wells with surface locations on the Nortex leases were bottomed beyond lease lines and were thus illegally deviated and illegally producing oil, and that a number of other wells on the leases which had been treated as producing wells and were assigned allowables as such were "dummy" wells. Loss of production from the deviated and dummy wells made the leasehold interests purchased by Nortex worth far less than was paid for them.

Schlumberger is a well servicing company specialization in logging and perforating oil wells. "Logging" is a service performed by lowering an electronic device into a well to locate the point in the bore hole at which the producing sands lie. "Perforating" is a service performed by lowering a mechanical device into a well to perforate holes in the well casing at the point where the logging shows the producing sands to lie, so that oil can seep from the sands into the well and be recovered by natural or artificial lift. Schlumberger logged and perforated a large number of wells in the East Texas Field, many of which were deviated, and logged, or logged and perforated, four of the illegally deviated wells located on the leases purchased by Nortex. Production allowables were secured for the four wells by furnishing false information concerning them to the Railroad Commission.

Oil production in the East Texas Field is from the Woodbine Sand. It is common knowledge to those closely associated with the oil industry in the East Texas Field that the Woodbine Sand lies at a depth of from 3,500 to 3,800 feet below the surface of the soil, and Schlumberger thus knew at the time it serviced the four Nortex wells that the bore hole of a well which had been bottomed at more than 4,000 feet in order to reach the Woodbine Sand was deviated from a normal vertical course. The length of the bore holes in the four Nortex wells was, respectively, 4,225, 4,421, 5,100 and 5,200 feet, and Schlumberger knew the approximate length of each of the bore holes from its own measurements and knew that these were deviated wells.

Schlumberger took steps calculated to protect its customers who might be subjected to investigation or to prosecution for drilling illegally deviated wells and producing oil therefrom. It developed a billing procedure by which the depth of a well it had logged was not shown on its bill for its services, and was shown to its accounting department only on a separate paper which could be destroyed. When the offi-

cial investigation of deviated wells in East Texas began, Schlumberger advised its employees to have poor memories. It also destroyed a valuable library of logs more than two years old which would have shown the depth of many East Texas wells.

■ Nortex contends that the facts summarized would support a reasonable inference by a jury that Schlumberger conspired with the lease owners, drillers and others to deviate the four wells and bottom them under adjoining or adjacent leases in violation of Railroad Commission Statewide Rule 54, and to take oil from such other leases without the consent of the owners in violation of Article 1348, Texas Penal Code. We disagree. There is abundant evidence of a conspiracy such as suggested by Nortex, and that the object of the conspiracy was accomplished; but only by suspicion and speculation can Schlumberger be linked to the conspiracy in two vital respects, e. g., knowledge of the object of the conspiracy and intention to injure adjoining owners.

■ A civil conspiracy has been defined by this court as "a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." Great Nat'l Life Ins. Co. v. Chapa, Tex. 377 S.W.2d 632, 635 (1964); State v. Standard Oil Co., 130 Tex. 313, 107 S.W.2d 550 (1937). But the gist of a civil conspiracy is the damage resulting from commission of a wrong which injures another, and not the conspiracy itself. Starling v. Hill, 121 S.W.2d 648 (Tex.Civ.App.—Waco, 1938, no writ); Shelton v. Lock, 19 S.W.2d 124 (Tex. Civ.App.—Amarillo, 1929, writ dism.); 16 Am.Jur.2d 149, Conspiracy, § 344. It follows that a conspiracy to do nothing more than violate Rule 54 by deviating the four Nortex wells, without a Railroad Commission permit, would have been meaningless as a civil conspiracy without the added plan or scheme to violate another provision of the Rule and bottom the

wells under leases of others with the intention of taking the oil of such others.

One without knowledge of the object and purpose of a conspiracy cannot be a co-conspirator; he cannot agree, either expressly or tacitly, to the commission of a wrong which he knows not of. In 15A C.J.S. Conspiracy § 1(2), p. 599, it is said that one of the essential elements required to establish a civil conspiracy is "a meeting of the minds on the object or course of action." And, of course, one without knowledge of a conspiratorial plan or scheme to injure another by the commission of a particular wrong cannot share the intent to injure such other.

The conspiracy alleged by Nortex to have existed in this case may be analogized to a conspiracy to defraud. We think the Supreme Court of Tennessee announced a sound rule of law to be applied in such cases in Brumley v. Chattanooga Speedway & Motordrome Co., 138 Tenn. 534, 198 S.W. 775, 776 (1917), when it said:

"A 'conspiracy to defraud' on the part of two or more persons means *a common purpose*, supported by a concerted action to defraud, *that each has the intent to do it*, and that it is common to each of them, and that each has the understanding that the other has that purpose." (Emphasis ours.)

The general governing rule is stated in 15A C.J.S. Conspiracy § 2, p. 600, as follows:

"There must be an agreement or understanding between the conspirators to inflict a wrong against, or injury on, another, a meeting of minds on the object or course of action, and some mutual mental action coupled with an intent to commit the act which results in injury; in short, there must be a preconceived plan and unity of design and purpose, for the common design is of the essence of the conspiracy."

Cf. International Bankers Life Ins. Co. v. Holloway, 368 S.W.2d 567, 581 (1963).

For purposes of this opinion, we may assume that Schlumberger had good reason to believe that the conspiracy existed as alleged by Nortex, and that the existence and object of the conspiracy could have been discovered by Schlumberger by the exercise of the slightest degree of diligence. We are unwilling to say, however, that the evidence will support a reasonable inference that Schlumberger had actual knowledge that the four particular wells had been or were to be bottomed under adjoining or adjacent leases for the purpose of producing oil owned by others, or that Schlumberger intended to ·participate in any such wrong. In the absence of such knowledge and intent, a finding that Schlumberger was a conspirator with the lease owners, drillers and others to bottom the wells beyond lease lines and wrongfully take the oil of others is insupportable.

There is no evidence that Schlumberger knew the location of the boundary lines of the leases on which the four wells had their surface locations. There is no evidence that Schlumberger knew or was advised that the wells had to be bottomed beyond lease lines in order to produce. There is no evidence that Schlumberger knew or was advised that its customers did not have Railroad Commission deviation permits as required by Rule 54. There is no evidence that Schlumberger knew who owned the adjoining leases and mineral rights, had any reason to agree to a plan or scheme of its customers wrongfully to produce and convert the oil of such owners, or had any reason to, or did, share an intent to injure them. There is no evidence that Schlumberger falsified any logs or performed any act to hoodwink the Railroad Commission into granting an allowable to the wells. There is no evidence that Schlumberger shared in any of its customer's ill-gotten gains. The uncontradicted evidence is that Schlumberger was performing a service for which it was paid

on a professional basis at its regular and customary rate.

We recognize that proof of a conspiracy may be, and usually must be made by circumstantial evidence, Jernigan v. Wainer, 12 Tex. 189 (1854), but vital facts may not be proved by unreasonable inferences from other facts and circumstances, "No Evidence" and "Insufficient Evidence", 38 Texas L.Rev. 359, 363; or, as has often been said by this court, a vital fact may not be established by piling inference upon inference, as would be required in this case. Rounsaville v. Bullard, 154 Tex. 260, 276 S.W.2d 791 (1955); Lobley v. Gilbert, 149 Tex. 493, 236 S.W.2d 121 (1951). To permit proof in this fashion, would violate the rule of Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059 (1898), which requires proof of any vital fact by evidence amounting to something more than a mere scintilla.

The judgment of the court of civil appeals is reversed and the judgment of the trial court is affirmed.

REAVLEY, J., not sitting.