John W. SWITZER, Appellant,

v.

William JOSEPH, Appellee.

No. 11624.

Court of Civil Appeals of Texas.

Austin.

June 11, 1969.

Rehearing Denied July 2, 1969.

Jones, Blakeslee, Minton, Burton & Fitzgerald, Roy Q. Minton, Austin, for appellant.

Osorio & Palmer, Tom Thomas, Austin, for appellee.

O'QUINN, Justice.

The question to be decided in this case is whether there is sufficient evidence to support jury findings that appellant was party to a conspiracy to defraud and knowingly benefited thereby.

William Joseph, appellee, brought this lawsuit against James H. Kuenstler, James L. Kuenstler, William Raschke, Rudy Villareal, John W. Switzer, and K & S, Inc., and alleged that the defendants conspired (1) to misappropriate funds of a business enterprise, existing between Joseph and James H. Kuenstler, and (2) to defraud Joseph.

Before trial Joseph filed a voluntary nonsuit as to Villareal and K & S, Inc., and before submission of the case to the jury Joseph nonsuited as to James L. Kuenstler. The trial court, based on the jury verdict, entered judgment for Raschke.

The trial court entered judgment against the two remaining defendants, Switzer and James H. Kuenstler, based on the jury findings, in the sum of $54,350.

Only Switzer perfected an appeal. Appellant brings one point of error contending that the trial court "* * * erred in overruling appellant's motion for new trial inasmuch as the jury's answers to special issues 2, 3 and 5 * * * are not supported by sufficient evidence."

The jury found, in answer to special issue No. 1 that James H. Kuenstler "misappropriated funds * * * given him by the plaintiff [Joseph] * * * to be used in the furtherance of their business enterprise."

The three special issues with which we are concerned in this appeal, each answered "Yes" by the jury, were inquiries restated briefly as follows:

No. 2: "Do you find * * * that any of the other defendants * * * entered into a conspiracy * * *ᵣ with the defendant, James H. Kuenstler, to misappro-

priate funds of the business enterprise * * * ?"

No. 3: "Do you find * * * that the defendant, John W. Switzer, was a party to the conspiracy * * * ?"

No. 5: "Do you⸍ find * * * that John W. Switzer benefited from the misappropriation of funds from William Joseph by James H. Kuenstler * * * knowing of such misappropriation?"

The business enterprise existing between Joseph and James H. Kuenstler began in Austin late in 1965 and ended sometime in May, 1966. In substance, the arrangement was that Joseph would furnish financing and James H. Kuenstler would supply experience and knowledge in a venture based on volume purchase and resale of used automobiles. The two men would share the profits equally.

It was represented to Joseph that James H. Kuenstler would purchase used automobiles from new car dealers, particularly from Kuenstler's father (James L. Kuenstler) at Corpus Christi, and that Kuenstler's father would deliver the cars to John W. Switzer in Victoria, who in turn was supposed to sell the vehicles to local retail used car dealers. The record shows that Appellant Switzer is the brother-in-law of James H. Kuenstler having married the daughter of James L. Kuenstler.

Although James H. Kuenstler continually represented to Joseph, throughout the life of their business relationship, that this arrangement was being carried out, the record shows that the arrangement was utilized seldom during this period. There is no evidence that more than one automobile was purchased through Kuenstler's father, and only a few cars were actually sold through Switzer at Victoria. The business was carried out in such manner, however, that Joseph was led to believe until May, 1966, that the arrangement was continuing as initially represented to him.

During this period James H. Kuenstler periodically gave Joseph an accounting of

automobiles purportedly sold, and indicated his desire to purchase other cars. Joseph would then issue a check to Kuenstler to pay for the automobiles to be purchased. When Kuenstler told Joseph that a sale had been made, Kuenstler would give Joseph a check for the full amount of the proceeds of the supposed sale, and Joseph in turn would pay Kuenstler one-half of the apparent profit. Records of these transactions were kept in Joseph's office, but the records were compiled and maintained entirely by Kuenstler. These records, purporting to show automobiles purchased and sold, reflect nearly 400 cars ostensibly handled by Kuenstler.

The checks Kuenstler delivered to Joseph, purporting to represent proceeds of sales by Switzer at Victoria, were signed by John W. Switzer and were drawn on a "special account" in Switzer's name at a bank in Victoria. Between November, 1965 and May, 1966, about 70 checks were written on this account having listed on them the year and make of automobiles supposedly sold. All such checks were signed by Switzer, but all the checks, except three, were made out, including payee, amount, and list of cars, by Kuenstler in Austin. The checks were signed in advance by Switzer and given to Kuenstler who filled them out in Austin.

When Kuenstler was unable to produce an inventory of automobiles, listed on Joseph's records as purchased but not sold, the business enterprise between them collapsed. Kuenstler was also unable to deliver the proceeds of the sale of the inventory. Joseph alleged in his suit, and the jury apparently found, that the inventory did not exist and that the proceeds of the checks Joseph had given Kuenstler to buy automobiles had been misappropriated and not spent for that purpose.

It appears from the testimony of both Joseph and Kuenstler that while their business relationship lasted they periodically pursued substantially this routine:

1) Kuenstler would hand Joseph a check, signed by Switzer drawn on the "special· account" at Victoria, which purported to represent proceeds of sales made in Victoria by Switzer from the inventory Keunstler maintained in Joseph's office in Austin;

2) Kuenstler would suggest that Joseph hold the check for a few days due to some sort of financial difficulty;

3) Kuenstler would show Joseph a list of cars, with prices, that Kuenstler wanted to buy, and Joseph would write a check for the total amount;

4) Kuenstler would take Joseph's check to an Austin bank, endorsing the check for deposit in the account of K & S, Inc., in that bank;

5) Kuenstler, who alone handled the K & S bank account, then drew a check on the K & S account, payable to John W. Switzer "special account" at Victoria, in an amount sufficient to cover the check Kuenstler initially handed Joseph drawn on the Switzer "special account."

"It is clear," Appellant Switzer states in his brief, "that under this arrangement William Joseph's bank account was depleted by the amount by which the outgoing check exceeded the incoming check. Apparently there was a regular depletion of that account in this manner, and this depletion was shown on the enterprise's books as accumulating in inventory. In deference to the jury's findings it must be presumed that this money was in reality being misappropriated."

There is no direct evidence that Appellant Switzer participated in a conspiracy with James H. Kuenstler to misappropriate the funds furnished by Joseph. Joseph testified that he never met Switzer prior to proceedings in this lawsuit and that appellant never at any time made misrepresentations to him. If Switzer was a part of the conspiracy Joseph alleged, his implication must be found in circumstantial evidence sufficient to support the jury's finding.

The circumstantial evidence tending to show Switzer's involvement may be stated in summary as follows:

1) James H. Kuenstler represented to Joseph that Switzer was participating in the enterprise between Kuenstler and Joseph; 2) Switzer shared to a limited extent in proceeds generated by Kuenstler's transactions with Joseph; 3) Switzer was an officer, director, and shareholder in K & S, Inc., the immediate depository of funds received by Kuenstler from Joseph; and 4) the checks Kuenstler gave Joseph, and represented to Joseph as proceeds from sale of automobiles, were drawn on Switzer's "special account" and were signed by Switzer.

A recent declaration by the Supreme Court of the proof required in this State to establish a civil conspiracy is found in Schlumberger Well Surveying Corporation v. Nortex Oil and Gas Corporation, 435 S. W.2d 854 (Tex. 1968), rehearing denied January 29, 1969. When the tests approved by the Supreme Court in that case are applied to this lawsuit, the evidence is insufficient to link Switzer to a conspiracy with James H. Kuenstler to defraud Joseph.

There is abundant evidence, and both Switzer and Joseph agree, that the plan actively pursued by James H. Kuenstler resulted in misappropriation of funds supplied by Joseph. But only by suspicion and speculation can Switzer be linked to a conspiracy with Kuenstler and show that Switzer had knowledge of the object of the conspiracy and had the intent to injure Joseph.

As stated in the forepart of this opinion, Joseph originally sued not only James H. Kuenstler, but also Kuenstler's father (James L.), Kuenstler's brother-in-law (Switzer), Kuenstler's father-in-law (Raschke), and Kuenstler's corporation, K & S, Inc. Before the case was finally submitted to the jury, Joseph filed nonsuits as to the corporation and as to Kuenstler's father. The trial court, on jury findings, entered judgment that Joseph take nothing against Kuenstler's father-in-law. Final judgment was against only Kuenstler and Switzer, his brother-in-law.

Joseph testified that Kuenstler told him that the automobiles bought with Joseph's money were being sold by Switzer to small dealers after Switzer got off his full time job at Victoria. Joseph also testified that Kuenstler told him that Kuenstler would pay Switzer whatever he wanted to and assured Joseph, "I will handle my brother-in-law." Joseph never talked to Switzer and never received a check from him. All Joseph's dealings were directly with Kuenstler who delivered the checks Switzer had signed in advance but had been filled out by Kuenstler. Before filling out the checks Kuenstler frequently made telephone calls to Switzer at Victoria to learn what balance was in the "special account."

Switzer was employed full time in Victoria by an oil and tool company, where he was on call 24 hours a day, and was not active in the automobile venture. Switzer apparently handled only three or four automobile transactions himself. Switzer testified that he thought he was in business with Kuenstler, who was buying and selling cars, that Kuenstler was buying the automobiles from Joseph, and that the checks Switzer signed were used by Kuenstler to pay Joseph. Switzer also thought that whatever profit was being made Kuenstler retained in the K & S, Inc., account which Kuenstler alone handled.

The K & S Corporation was formed in January, 1966, at the instance of Kuenstler. Howard Hayden, the attorney who prepared the charter and became one of the incorporators and a director, testified that he never met Switzer until after the corporation was formed and the first meeting of directors was held at Lakeway Lodge near Austin. Hayden testified that the corporation was intended to be a "tax shelter" for Kuenstler and that Kuenstler suggested including Switzer in the corporate setup because Switzer's credit rating would

help the company and Kuenstler had no credit rating. In advance of the meeting at Lakeway, Kuenstler asked Hayden not to mention to Switzer anything about Kuenstler's "transactions with Mr. Joseph * * *."

Hayden also testified that "* * * besides that organizational meeting, the only thing that was ever done was the opening of a bank account for the corporation, and Mr. Kuenstler's business habits were just not methodical enough, in spite of my insistence he never got around to using the account entirely for the business, and I later considered the corporation a complete nonentity from all standpoints."

The record shows that benefits Switzer realized from the venture he believed he was carrying on with Kuenstler were insignificant when considered in light of the entire operation. In excess of $200,000 moved through the "special account" at Victoria, and the jury found that Joseph's loss amounted to $54,350. Yet the total amount received by Switzer appears not to have exceeded $700 to $800, including two or three car payments. Switzer furnished $1,000 for Kuenstler to get the corporation organized. In May, 1966, when the "special account" at Victoria became overdrawn because checks from the K & S Corporation account in Austin did not clear, Switzer signed a note at the Victoria bank for about $20,000 to make up the deficit. At the trial Kuenstler testified that he owed Switzer $600 to $700 on a personal loan of $1,000 made about the time the enterprise between Kuenstler and Joseph collapsed. Switzer testified that at the time of trial he still owed about $4,800 as a result of losses from his venture with Kuenstler.

The Supreme Court has defined a civil conspiracy as a "combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." Great National Life Insurance Co. v. Chapa, 377 S.W.2d 632 (Tex. 1964); State v. Standard Oil Co., 130 Tex. 313, 107 S.W.2d 550 (1937); Schlumberger Well Surveying Corporation v. Nortex Oil and Gas Corporation, supra.

■ To be made a party to a conspiracy to defraud, a person must have knowledge of the object and purpose of the conspiracy and must share with the conspirators a common intent to injure another person. In the Schlumberger case the Supreme Court approved as sound a rule of law applied in Brumley v. Chattanooga Speedway & Motordrome Co., 138 Tenn. 534, 198 S. W. 775 (1917):

"A 'conspiracy to defraud' on the part of two or more persons means *a common purpose,* supported by a concerted action to defraud, *that each has the intent to do it,* and that it is common to each of them, and that each has the understanding that the other has that purpose." (Emphasis by Texas Supreme Court, 435 S.W.2d 854, 857, col. 1.)

■ There is no evidence that Switzer knew the true relationship between Kuenstler and Joseph, and it is undisputed that Kuenstler sought to keep the facts from Switzer. There is nothing to show that Switzer knew that Kuenstler was not in fact buying cars from Joseph, and was representing to Joseph that the cars were being bought from dealers, including Kuenstler's father at Corpus Christi, and that Switzer was selling the cars for Joseph in Victoria. Without knowledge of a conspiratorial scheme to injure Joseph by this conduct, Switzer could not share the intent of Kuenstler to injure Joseph. An essential element to establishing a civil conspiracy is "a meeting of the minds on the object or course of action." 15A C.J.S. Conspiracy § 1(2), p. 599, quoted in Schlumberger case.

■ As observed by the Supreme Court in the Schlumberger case, proof of a conspiracy may be and usually must be made by circumstantial evidence. Jernigan v. Wainer, 12 Tex. 189 (1854). In Waco Drug Co. v. Hensley, 34 S.W.2d 832 (Tex.

Comm.App., 1931) the court applied the rule that "The evidence must do more than raise a suspicion. It must lead to belief." The evidence "must do more than raise a mere suspicion on which a conjecture or speculation as to the existence of the conspiracy might be based." 15A C.J.S. Conspiracy § 30, p. 702, citing Waco Drug v. Hensley, supra, and Caufield v. El Paso Times, 280 S.W.2d 766 (Tex.Civ.App., Austin, 1955, no writ).

Although circumstantial evidence may be sufficient to prove existence of a conspiracy, "disconnected circumstances any one of which, or all of which, are just as consistent with a lawful purpose as with an unlawful undertaking are insufficient to establish a conspiracy." 15A C.J.S. Conspiracy § 30, p. 699–700; Gager v. Reeves, 235 S.W.2d 688 (Tex.Civ.App., Fort Worth, 1950, writ ref. n. r. e.) Stated another way, the rule is that the acts of a conspiracy must be established by full, clear, satisfactory and convincing testimony. Gager v. Reeves, supra.

Whatever surmise or suspicion may have been raised by the circumstances surrounding Switzer's part in Kuenstler's activities that resulted in damage to Joseph, the vital facts needed to show that Switzer knew what Kuenstler was doing to Joseph and that he shared with Kuenstler an intent to damage Joseph are not present. Such facts may not be established by piling inference upon inference as would be required in this lawsuit. Schlumberger case, and cases cited, 435 S.W.2d 854, 858, col. 1.

Switzer believed the profits of his business arrangement with Kuenstler were being accumulated in the K & S account in Austin which Kuenstler controlled. Switzer became suspicious, a short time before the Kuenstler and Joseph enterprise collapsed, because Kuenstler was buying such large numbers of cars, but Kuenstler reassured Switzer by saying that "he was making money."

It is inconsistent with reason or probability that Switzer knowingly took part in beguiling Joseph out of $54,350, while he himself was going deeper in debt borrowing money to keep his brother-in-law in business, and reaping, as his part of the plunder, only a few hundred dollars for car payments and for a business trip to Lakeway Lodge in behalf of the corporation. Proof that Switzer received these sums knowing they were part of funds of which Joseph had been defrauded is so weak that it raises only surmise or suspicion of the existence of the fact sought to be established. Proof of a vital fact must be made by evidence amounting to something more than a mere scintilla. Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059 (1898).

Appellant did not assign as error a "no evidence" point. In both the motion for new trial and on appeal, appellant's position is that "there was insufficient evidence" to support the jury's finding. We sustain appellant's "insufficient evidence" point, and although it appears that the facts were fully developed in trial of this cause, we can only reverse and remand, however lacking in probative force the evidence may be. Calvert, " 'No Evidence' and 'Insufficient Evidence,' " 38 Tex.Law Rev. 361, 369; In Re King's Estate, 150 Tex. 662, 244 S.W.2d 660; Garrett v. Downs, 377 S.W.2d 113 (Tex.Civ.App., Dallas, 1964, no writ).

The evidence being insufficient to support the findings of the jury that John W. Switzer was a party to a conspiracy with James H. Kuenstler and that he benefited from the misappropriation of funds belonging to William Joseph knowing of the misappropriation, the judgment of the trial court, insofar as it awards damages against John W. Switzer, is reversed, and the cause is remanded to the trial court for such further proceedings as may be appropriate as between William Joseph and John W. Switzer.

The judgment as it awards damages against John W. Switzer is reversed, and the cause is remanded.

Reversed and remanded.