**GIDDINGS CONVALESCENT HOME, INC., et al., Appellants,**

v.

**Rogers D. WILSON et al., Appellees.**

**No. 11754.**

Court of Civil Appeals of Texas, Austin.

July 1, 1970.

Rehearing Denied July 22, 1970.

Johnson, Jones & Sheppard, Samuel D. McDaniel, Austin, for appellants.

Michael J. Simmang, G. L. Kelly, Jr., Giddings, for appellees.

O'QUINN, Justice.

This appeal is from a summary judgment entered by the district court of Lee County on motion of the First National Bank of Giddings as defendant.

Suit was filed originally in Travis County naming Rogers D. Wilson and the First National Bank of Giddings as defendants, but on plea of privilege the cause was severed and the suit against the bank was transferred to Lee County.

Plaintiffs below were Giddings Convalescent Home, Inc., Eric K. Palmros, and Eric K. Palmros, Jr., who bring this appeal from the summary judgment.

Plaintiffs pleaded that Eric K. Palmros and Eric K. Palmros, Jr., entered into an agreement with Rogers D. Wilson under which the parties organized Giddings Convalescent Home, Inc., and obtained a loan commitment in the amount of $86,000 from the First National Bank of Giddings for the construction of a nursing home in Giddings. Land for the structure was furnished by Palmros and his son. The commitment from the bank was conditioned that Palmros, senior, and Wilson would personally guarantee the permanent loan. Interim financing was obtained through a Fort Worth bank, and the nursing home was erected.

The stock of the corporation was held with fifty percent in Palmros and fifty percent in Wilson. The three organizers of the corporation became the three directors. When the nursing home was substantially completed, Wilson advised Palmros that he would not give his personal guarantee on the permanent loan to the corporation unless the by-laws of the corporation were amended to provide for a fourth director to be named by Wilson. Palmros refused to accede to Wilson's proposal.

Wilson tendered his resignation as an officer and director in the corporation after first securing an agreement from the First National Bank that the bank would guarantee establishment of a permanent loan on the nursing home which would enable Wilson to acquire the property at a trustee's sale. Wilson bought the nursing home at the trustee's sale and later transferred the property to Giddings Nursing Home, Inc., a corporation organized by Wilson.

The theory of plaintiffs' suit as found in the petition is that:

1). The bank agreed to establish a permanent loan to Wilson " * * * in order that Defendant Wilson could bid the agreed amount of the loan at the Trustee's Sale which both * * * Defendants knew would result from * * * Wilson's refusal to consummate the transaction and close the permanent loan for the benefit of Giddings Convalescent Home, Inc."

2). "By reason of * * * Wilson's arbitrary refusal to close the permanent loan for Giddings Convalescent Home, Inc., said corporation had insufficient cash or other assets * * * to pay the * * * mechanic's lien note [$86,000] * * *"

3). "Although * * * Wilson * * * [had resigned] as a director only shortly before the date of the Trustee's Sale, and although he was and still is the owner of fifty (50%) of the capital stock of Giddings

Convalescent Home, Inc. * * * Wilson bought in the said nursing home * * * for his own account, in complete disregard of the interests of the corporation, and his fellow shareholder therein * * * and in direct contravention of his obligation as a majority shareholder to act in the best interests of the corporation."

4). "Acting in concert and cooperation with the First National Bank * * * Wilson bought in said property * * * and closed a permanent loan with said Bank, secured by said property, on the same date. The actions of Defendants Wilson and the First National Bank * * * were contrary to the best interests of Giddings Convalescent Home, Inc., and were calculated to cause irreparable damage to said corporation."

Plaintiffs sued Wilson and the bank for $250,000 in damages, being the fair market value of the nursing home, and sued Wilson for exemplary damages in the sum of $50,000. Plaintiffs also sued for a complete accounting by Wilson and for other relief against Wilson.

The question to be decided is whether the suit against the First National Bank presents any material issues of fact upon which a summary judgment may not be entered.

Plaintiffs argue:

"In the case * * * where the bank knew Wilson's intent and plan to cut Palmrors out of the nursing home and raid the corporate assets—if the bank would lend him the money—the money was an instrumentality capable of doing serious harm if misued, and the bank knew it was to be misused. The money was also property over which the bank had possession and control, and which the bank knew afforded Wilson a peculiar temptation or opportunity for intentional interference, with Wilson's prior obligations to Palmros and the corporation, likely to cause harm. * * * The bank * * * knew the money would be used to harm another and was under a duty not to make the loan to Wilson."

Plaintiffs in a motion to set aside the summary judgment contended that the bank "aided and abetted the commission of a fraud" and that the bank "conspired" with Wilson in consenting to lend him money knowing that Wilson would bid in the property at the trustee's sale. In a letter to the trial judge found in the record plaintiffs urged that a cause of action against the bank was stated in the petition "either for tortious interference with business relation, or a quasi contract, or both."

Plaintiffs in their brief describe the suit in this language:

"This is an appeal from a summary judgment, rendered in effect upon the pleadings, and adjudging that Plaintiffs failed to state a cause of action against Defendant bank, in tort, where Defendant bank with actual knowledge of Co-Defendant Wilson's intent to perpetrate a fraud on Plaintiffs, aided, abetted, and made possible said fraud, by furnishing Defendant Wilson the financing necessary for the commission of the fraud."

The pleadings do not state a conspiracy to defraud on the part of the bank in concert with Wilson. The rules for stating such an action are clearly set out in Schlumberger Well Surveying Corporation v. Nortex Oil and Gas Corporation, 435 S. W.2d 854 (Tex.Sup.Ct.1968). But even where the allegations of fraud or conspiracy are adequately stated in the pleadings, the allegations in and of themselves do not raise fact issues prohibiting the granting of a summary judgment. Maxey v. Rodman, 444 S.W.2d 353 (Tex.Civ.App., El Paso, 1969, writ ref. n. r. e.).

The president of the First National Bank made an affidavit that the bank refused to make the loan to the Giddings Convalescent Home, Inc., because the condition that both Palmros and Wilson personally guarantee the loan was not complied with, Wilson having refused to guarantee the loan personally. The bank refused to make the loan to the corporation "for the sole reason that * * * [the condition] of the * * * commitment letter was not met,

and for no other reason * * * [and] thereafter, a like loan was made to * * * Wilson, personally under the identical terms and conditions, which loan provided no greater benefits to Defendant Bank than the original loan commitment to The Giddings Convalescent Home, Inc., would have provided."

The facts stated in the affidavit are undisputed in the record.

Palmros made an affidavit that he had advised the president of the bank that if the loan should be made to Wilson alone it would enable Wilson to acquire the nursing home to the exclusion of Palmros and the corporation he and Wilson had organized to operate the nursing home.

The record before us does not disclose a cause of action against the First National Bank of Giddings in favor of the plaintiffs.

The judgment of the trial court is affirmed.