Victoria H. ECHOLS, Appellant,

v.

AUSTRON, INC., et al., Appellees.

No. 12316.

Court of Civil Appeals of Texas, Austin.

Nov. 12, 1975.

Rehearing Denied Dec. 3, 1975.

---

Thomas H. Watkins, Watkins, Ledbetter, Hayden & Ramsey, Austin, for appellant.

T. B. Wright, Austin, for appellee, Austron, Inc.

Milton L. Bankston, of Stubbeman, McRae, Sealy, Laughlin & Browder, Austin, for appellee, James D. Echols.

SHANNON, Justice.

This appeal arises from an alleged civil conspiracy.

Appellant, Victoria H. Echols, filed suit in the district court of Travis County against appellees, James D. Echols, her former husband, and Austron, Inc. Appellee Echols was, at all times material, the president of Austron, Inc. Appellant alleged a conspiracy between appellees to deprive her of assets awarded her by a previously entered judgment of divorce. The suit was for exemplary damages in the sum of $55,000.00, for an accounting, and for equitable relief with regard to the conversion rights pertaining to certain certificates of stock of Austron, Inc. The case was submitted to the jury and after the jury was unable to agree upon a verdict, the district court discharged the jury and upon motion of appellees, entered judgment for appellant for the sum of money equal to the amount paid by Austron, Inc., to Echols representing accrued dividends on certain classes of its preferred stock. Otherwise, the judgment provided that appellant take nothing.

James D. Echols and Victoria H. Echols were divorced by order of the district court of Travis County on November 5, 1971. The divorce judgment awarded practically all of the property of the parties to appellant except that appellee Echols was awarded 32,000 shares of Austron, Inc., common stock. Along with other property, appellant was awarded 2,942 shares of Austron, Inc., Class C preferred stock and 8,822 shares of Austron, Inc., Class D preferred stock. The divorce judgment further provided that all community indebtednesses of the marriage be adjudged the indebtedness of appellee Echols, and he was ordered by the terms of the judgment to indemnify and hold appellant harmless from such indebtedness.

In her original and supplemental petitions appellant alleged that appellee Echols and Austron, Inc., conspired to fraudulently deprive her of her share of the community assets by authorizing a lump sum or bonus payment to Echols immediately after the rendition of the divorce. Appellant pleaded that the payment by Austron, Inc., to Echols represented compensation to him for services performed during the existence of the marriage and that she was due one-half of the sum paid.

Appellant alleged further that Echols and Austron, Inc., conspired to fraudulently deprive her of her property by refusing to pay her the accrued dividends on the Class C and D Austron, Inc., preferred stock which had accumulated from the first quarter of 1971 through the date of the rendition of the divorce, November 5, 1971. Appellant alleged that instead of paying her those dividends, Austron, Inc., in January, 1972, paid those dividends to Echols.

Appellant also alleged that the Class C Austron, Inc., preferred stock had certain conversion rights which entitled her to have such stock converted into Austron, Inc., common stock. Appellant elected to convert her preferred shares of stock to common stock, but she alleged that through the efforts of Echols and Austron, Inc., she could not obtain the consent of the secondary pledgee of the stock, Texas Capital Corporation. Appellant claimed that the refusal by Austron, Inc., to honor her election to convert her preferred stock to common stock was deliberate and contrived solely for the purpose of injuring her and depriving her of the enhanced value which the common stock would have had. In this connection, appellant prayed for an injunction requiring Austron, Inc., to convert her

preferred stock into common stock, and to cause the issuance and delivery to her of those certificates of common stock.

In her supplemental petition appellant claimed that Austron, Inc., refused to allow her the conversion of her preferred stock to common stock. Appellant claimed that by so blocking her conversion of the preferred stock, Echols failed to hold her harmless of the lien of the second pledgee, Texas Capital Corporation, in violation of the provisions of the judgment of divorce.

A resumé of the facts follows. Appellee Echols is the president of Austron, Inc., and has been since its beginning in 1962. He is the owner of about thirty percent of the company's common stock. At the time of the divorce proceedings all of the common and preferred stock of Austron, Inc., held by appellant and appellee Echols was pledged as collateral on loans made by a local bank and by Texas Capital Corporation. The loans and pledges had originated in 1967 when Austron, Inc., borrowed $300,-000.00 from Texas Capital Corporation, and Echols and others borrowed $200,000.00 from the bank to purchase certain product lines from another company. Since that date the financial condition of Austron, Inc., has fluctuated. In the autumn of 1972, Austron, Inc., began a recapitalization program which included the sale of a subsidiary company, payment on the Texas Capital Corporation notes, refinancing the note at the bank, and redemption of all classes of preferred stock.

The Class C preferred stock of Austron, Inc., carried a conversion privilege whereby it could be converted at anytime by the owner at the rate of one share of preferred stock for one share of common stock. The conversion privilege continued up until such time as a redemption might be declared by the Austron, Inc. Class C preferred stock had a stipulated dividend of seven and one-half percent interest annually, and a redemption value of $4.25 per share.

The common stock of Austron, Inc., has never paid any dividends and it has no stated redemption value. Unlike the preferred stock, the common stock does have voting privileges.

After the rendition of the divorce between the parties on November 5, 1971, but prior to the entry of the judgment on January 7, 1972, three events occurred. On November 12, 1971, Austron, Inc., paid Echols a "bonus payment" of $2,000.00. On December 1, 1971, Austron, Inc., with the consent of its creditor, Texas Capital Corporation, raised Echol's salary some $395.84 monthly. Also in the time between the date of the rendition of the divorce and the entry of the judgment, Austron, Inc., paid dividends to Echols on the Class C and D preferred stock held in Echols' name for the first three quarters of 1971.

On September 1, 1972, the board of directors of Austron, Inc., voted to redeem on October 9, 1972, certain classes of preferred stock, including Class C preferred stock. The bylaws of Austron, Inc., provide that thirty days' notice be given to the affected stockholders, and that should such a shareholder choose to exercise his privilege of conversion the exercise of that right must be accomplished five days before the stated redemption date, or in this instance, on October 3, 1972.

During the afternoon of Friday, September 29, 1972, appellant through her attorney, presented to Austron, Inc., the stock certificate for 2,942 shares of Class C preferred stock for conversion on a one-to-one basis for common stock. With the stock certificate appellant also presented to Austron, Inc., a letter from the bank lienholder assenting to the conversion. Appellant, however, did not have consent for conversion from the other lienholder, Texas Capital Corporation. The consent of Texas Capital Corporation was a prerequisite for conversion.

After appellant's presentation of the certificate and request for conversion on Friday, September 29, 1972, and before Monday, October 2, 1972, Echols called the president of Texas Capital Corporation, Thomas

H. Schnitzius, by telephone and advised him of appellant's request. Schnitzius asked Echols whether Austron, Inc., preferred conversion or redemption of the stock. Echols told him that ". . . we preferred not to have the stock converted, and we preferred not to have Mrs. Echols as a shareholder—common shareholder because of her disruption of the company's business in the past." On October 19, 1972, the president of Texas Capital Corporation advised Austron, Inc., that his company refused to consent to appellant's request to convert her preferred stock to common stock.

At trial, Schnitzius testified that Texas Capital Corporation was a major creditor of Austron, Inc., and that under the loan agreement his company had the right to have a member on the board of directors of Austron, Inc. In deciding whether or not to give his company's consent to appellant's request for conversion, Schnitzius testified that he considered the conversion disadvantageous to his company. He said that he made the decision for Texas Capital Corporation with no pressure from Echols.

Appellant's preferred stock was then redeemed and the sum of about $13,000.00 was placed in a local bank in escrow for appellant and appellant's stock certificate was canceled.

Appellant attacks the judgment by three points of error: (1) the court erred in directing a verdict in that there was sufficient evidence to raise a fact issue on the question of conspiracy; (2) the court erred in not granting judgment for an additional $1,000.00 as the undisputed evidence was that Austron, Inc., paid a $2,000.00 bonus to Echols, that was community property; and (3) the trial court erred in failing to order Echols to exchange sufficient shares of Austron common stock to appellant for her Austron preferred stock, since as a matter of law, Echols had disobeyed the order of the trial court to indemnify appellant from all loss as a result of the community debts.

■ A civil conspiracy has been defined as a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. The gist of a civil conspiracy is the damage resulting from the commission of a wrong which injures another, and not the fact of the conspiracy itself. *Schlumberger Well Sur. Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854 (Tex.1968).

■ Proof of a civil conspiracy may be, and usually must be made by circumstantial evidence, but vital facts may not be proved by unreasonable inferences from other facts and circumstances; or as it is said, a vital fact may not be established by piling inference upon inference. *Schlumberger Well Sur. Corp. v. Nortex Oil & Gas Corp., supra.*

■ Although circumstantial evidence may be sufficient to prove the existence of a conspiracy, disconnected circumstances any one of which, or all of which, are just as consistent with a lawful purpose as with an unlawful undertaking are insufficient to establish a conspiracy. *Switzer v. Joseph*, 442 S.W.2d 845 (Tex.Civ.App.1969, no writ), *Gager v. Reeves*, 235 S.W.2d 688 (Tex.Civ. App.1950, writ ref'd n. r. e.), 15A C.J.S. Conspiracy § 30, at 699–700 (1967).

■ Under her point of error one, appellant lists a series of business judgments by Austron, Inc., which she says amount to circumstantial evidence of conspiracy. These decisions were: the decision to redeem Class C stock; the communication with Texas Capital Corporation with regard to appellant's attempt to convert her preferred stock; the decision of Texas Capital Corporation to refuse to allow appellant to convert; the company's inability to obtain alternate financing to free up the assets that were awarded to appellant held as collateral by a local bank; the decision not to request Texas Capital's approval of the conversion until it was chronologically too late for appellant to comply with Austron's bylaw requirements; the decision to grant Echols the largest increase in salary which he had ever received just subsequent to the time it would benefit appellant; the deci-

sion to grant Echols the largest bonus which he had ever received just subsequent to the time it would have benefited appellant; and the decision to pay community dividends after the date of the divorce hearing to Echols at a time when it would not benefit appellant.

We have examined the statement of facts with respect to the series of business judgments made by Austron, Inc., which are urged by appellant as circumstantial evidence of conspiracy. We are satisfied from an examination of the statement of facts that the evidence supports appellees' position that such business judgments are just as consistent with a lawful purpose as with an unlawful undertaking. *Switzer v. Joseph, supra.* The decision of the board of directors to redeem the preferred stock was not unlawful. It should be observed that one class of preferred stock ordered redeemed was not even a class held by appellant. It is true that Echols did call Schnitzius by telephone and inform him that appellant had presented her preferred stock certificate for conversion, but appellant produced no evidence to show that the purpose of the telephone call was to persuade Schnitzius to refuse the consent of his company to the conversion. Appellant called Schnitzius as her witness, and Schnitzius testified that he asked Echols' preference, and upon being asked, Echols told him. It is also clear that the decision to refuse to consent to appellant's conversion was the responsibility of Texas Capital Corporation and not that of Austron, Inc. The judgment of divorce did not impose any specific time for Echols to free appellant's stock from the lien. The record shows that because of its recapitalization program commenced in the autumn of 1972, and with the aid of two years of good profits, Austron, Inc., and Echols *were* able to free the stock from the lien.

There is nothing to appellant's claim that Austron, Inc., and Echols decided not to request the consent of Texas Capital Corporation until it was too late to comply with the bylaw requirements. As will be recalled, appellant requested a conversion on Friday, September 29, 1972. Echols called Schnitzius before October 2, 1972, concerning whether or not Texas Capital Corporation was willing to give its consent.

There is nothing unlawful in an officer of a corporation receiving at any time a raise in salary or a bonus. The facts show that under its loan agreements, Texas Capital Corporation controlled the salaries of the officers of Austron, Inc. Texas Capital Corporation had denied a raise to Echols until Austron, Inc., had become current on the payment of its loan obligation. Austron, Inc., became current in the autumn of 1971, and on December 1, 1971, Texas Capital Corporation consented to the salary increase and the bonus. Additionally, there is no evidence that the salary raise or the bonus were, as termed by appellant, the largest salary increase or largest bonus that he had ever received.

In connection with the last decision of Austron, Inc., which appellant attacks as "conspiratorial," Austron, Inc., on January 3, 1972, in due order of business, paid the dividends for the first three quarters of 1971 to all persons in whose name the stock was registered on the corporate records. Subsequent to the declaration of the dividend, the judgment of divorce was entered on January 7, 1972. The payment by Austron, Inc., of the dividends was in accordance with its bylaws, and as such, no illegal act was committed.

■ Appellant recognizes the force of the rule in *Switzer v. Joseph, supra*, but claims that the following testimony of Echols is direct evidence of conspiracy, and that, as a result, she has succeeded in taking the case beyond the *Switzer v. Joseph, supra*, rule, and that she has raised an issue of fact which should have been resolved by the jury. The following answers of Echols were in response to questions from appellant's counsel.

"Q All right. Mr. Echols, is it not a fact that you have told your wife that

you will see to it that she will never benefit from those assets awarded to her in the divorce?

A May I ask when that conversation took place?

Q I am just asking you whether or not you made that statement to her.

A There was a great deal of very strong language expressed before the divorce. I assure you that no such conversation took place after this judgment was entered.

In one conversation that I had with her I told her that I had been approached by one of my officers who had told me that, at a party, she had bragged about—she was going to wind up owning half of Austron and she was going to control Austron. He told me that if she walked in the front door, that he was going to walk—

MR. WATKINS: I would object to his testifying to hearsay. I would like to know what he said rather than what somebody told him.

THE COURT: Sustained.

A Well, I told her that that kind of activity was not productive, that that wasn't going to enhance the value of her stock. That was going to make it worthless. This may be the conversation that you have reference to. But, I assure you that no such conversation took place after this divorce decree. I have never expressed any dissatisfaction with the divorce decree and the division of property since that time."

If the quoted testimony of Echols is any evidence of conspiracy, it is, in our opinion, no more than a scintilla. To permit proof of conspiracy in this fashion would violate the rule of *Joske v. Irvine*, 91 Tex. 574, 44 S.W. 1059 (1898), which requires proof of any fact by evidence amounting to something more than a mere scintilla. *Schlumberger Well Sur. Corp. v. Nortex Oil & Gas Corp., supra.*

■ In closing the discussion of this point, we observe that the statement of facts does not show that appellant has suffered any pecuniary damage as a result of any act or omission of appellees. For that additional reason, appellant has failed in her effort to show a conspiracy. *Schlumberger Well Sur. Corp. v. Nortex Oil & Gas Corp., supra*, at page 856.

■ Appellant's point of error two claims that the district court erred in not granting judgment for her for an additional $1,000.00 as the undisputed evidence was that Austron, Inc., paid Echols a $2,000.00 bonus that was community property. It will be recalled that Austron, Inc., paid the bonus to Echols after the rendition of the judgment of divorce, but before the entry of that judgment.

Point of error number two will be overruled inasmuch as the rights of the parties were fixed as of the time of the rendition of the judgment November 5, 1971, rather than as of the time of the entry of the judgment, January 7, 1972. See *Baugh v. State*, 402 S.W.2d 768 (Tex.Cr.App.1966).

■ Appellant's third point of error claims error of the district court in refusing to order Echols to exchange a sufficient number of shares of Austron, Inc., common stock to appellant for her Austron, Inc., preferred stock since as a matter of law Echols had violated the district court's order to indemnify Echols from all loss as a result of the community debts.

The divorce judgment awarded appellant the shares of Austron, Inc., Class C preferred stock, "together with all accrued earnings, dividends, and conversion rights thereof, and all of the certificates representing same." The judgment ordered Echols "to indemnify and hold [appellant] harmless therefrom, and to protect all of said property from foreclosure, attachment, and loss for the benefit of [appellant]."

Appellant claims that because of her "loss" of conversion rights, she has a right

to be indemnified by Echols in shares of common stock. We will overrule the third point of error. It was appellant, not appellee Echols, who lost the conversion rights. Furthermore, the divorce judgment did not place the duty upon Echols to see to it that appellant timely converted her preferred stock.

The judgment is affirmed.