NO. 07-00-0567-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

NOVEMBER 28, 2001

_____

IN THE INTEREST OF D.P., A CHILD

_____

FROM THE 320TH DISTRICT COURT OF POTTER COUNTY;

NO. 60,452-D; HONORABLE DON EMERSON, JUDGE

_____

Before BOYD, C.J., and QUINN and REAVIS, JJ.

Alisha Cordell appeals from an order following a bench trial terminating her parental rights to her son, D.P., a minor child, where no findings of fact and conclusions of law were requested, and none were signed or filed. By two points of error, Cordell contends the evidence is legally and factually insufficient to terminate her parental rights. Based upon the rationale expressed herein, we reverse the judgment and remand the cause to the trial court.

Cordell is the natural mother of D.P., who was born on February 15, 1999. Because Cody Podzemny was originally thought to be the natural father of the child, he was joined as a party, but after tests showed that he was not the natural father, he was dismissed and Michael Jean Cates was made a party. Cates filed a voluntary affidavit of relinquishment of his parental rights.

During all relevant times, Podzemny and Cordell resided together. On May 22, 1999, when D.P. was about three months old, Cordell took him to the emergency room because he had been vomiting for several hours. At that time, no visible injuries or bruises on the infant were noted; however, x-rays indicated that D.P. had suffered several fractures of his ribs. The medical professionals concluded that the fractures had occurred at various times within the last 30 days and that they were not the result of an accident. One professional concluded that the child was a victim of abuse or neglect. Four days after D.P. was taken to the hospital, the Department of Protective and Regulatory Services (the Department) assumed custody of the child by emergency order signed May 26, 1999. Following a non-jury trial, the court terminated Cordell's parental rights concluding that she had (a) knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endangered the physical or emotional well-being of the child; (b) engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the physical or emotional well-being of the child; and (c) termination of

2

Cordell's parental rights was in the best interest of the child.  *See* Tex. Fam. Code Ann. § 161.001(1) (D) and (E) and (2) (Vernon Pamph. Supp. 2002).[1]

By two points of error, Cordell contends the evidence is legally and factually insufficient to terminate her parental rights.  By her argument and briefing, she limits her challenges to the grounds designated under section 161.001(1) (D) and (E).  Because both of these grounds implicate the term "knowingly," we first consider the definition of the term.

Knowingly

As material here, subsections (D) and (E) provide as follows:

(D)  knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;

(E)  engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotion well-being of the child;

Although the term "knowingly" is defined in section 6.03(b) of the Texas Penal Code, it is not defined in chapter 161 of the Family Code.  Because the parties have not presented any definition, statutory or otherwise, of the term for purposes of termination proceedings, the Code Construction Act directs that we read the term in context and construe it with the rules of grammar and common usage.  Tex. Gov't Code Ann. § 311.011(a) (Vernon 1998).

---

[1]All references herein to section 161.001 are to the Texas Family Code Annotated (Vernon Pamph. Supp. 2002).

Webster's Third New International Dictionary 1252 (1976) defines the adverb "knowingly" as follows:

in a knowing manner; with awareness, deliberateness or intention.

Black's Law Dictionary 872 (6th ed. 1990) defines the term as follows:

[w]ith knowledge; consciously; intelligently, wilfully; intentionally. An individual acts "knowingly" when he acts with awareness of the nature of his conduct.

Considering the constitutional implications of a proceeding to terminate parental rights and the above definitions, we will conduct our review to determine whether the evidence is legally and factually sufficient to support a finding that Cordell's conduct was committed "knowingly."

## Standard of Review

The natural right existing between parents and their children is of constitutional dimension. Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, termination proceedings must be strictly scrutinized. In Interest of G.M., 596 S.W.2d 846 (Tex. 1980). A termination decree is complete, final, irrevocable, and divests for all time that natural right as well as all legal rights, privileges, duties, and powers with respect to each other except for the child's right to inherit. *Holick*, 685 S.W.2d at 20. In proceedings to terminate the parent-child relationship brought under section 161.001 of the Family Code,

4

the petitioner must establish one or more acts or omissions enumerated under subsection (1) of the statute, and must additionally prove that termination of the parent-child relationship is in the best interest of the child. Both elements must be established and proof of one element does not relieve the petitioner of the burden of proving the other. *See* Holley v. Adams, 544 S.W.2d 367, 370 (Tex. 1976).

Because termination of parental rights is of such weight and gravity, due process requires the petitioner to justify termination by clear and convincing evidence. § 161.001. *In Interest of G.M.*, 596 S.W.2d at 847. This standard is defined as "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id*. Although the clear and convincing burden of proof required at the trial level is well settled, appellate courts have struggled to reconcile this burden of proof with the standard for appellate review of challenges to the sufficiency of evidence. As this Court has previously noted, the clear and convincing standard does not alter the rules generally applicable when appellate courts review factual findings. In Interest of R.D.S., 902 S.W.2d 714, 716 (Tex.App.--Amarillo 1995, no writ).

That being said, we turn to the well settled standards of review for challenges to sufficiency of the evidence. When presented with a challenge to the legal sufficiency of the evidence, the reviewing court must consider all the evidence in a light most favorable to the party in whose favor the finding was rendered indulging every reasonable inference

5

in that party's favor. Associated Indem. Corp. v. CAT Contracting, Inc., 964 S.W.2d 276, 285-86 (Tex. 1998). If there is any evidence of probative force to support the finding, the finding must be upheld. ACS Investors, Inc. v. McLaughlin, 943 S.W.2d 426, 430 (Tex. 1997). In reviewing a challenge to the factual sufficiency of the evidence, the court must consider, weigh, and examine all the evidence of record. Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989). The court should set aside a finding only if the evidence which supports the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).

## Analysis

Cordell testified that she took her son to the emergency room because he had been vomiting for several hours. Testimony of emergency room personnel and physicians established that (1) x-rays disclosed the child had suffered several broken ribs but, (2) there were no external or visible indications of injury to the ribs. Although Cordell acknowledged that she and Podzemny had engaged in some acts of domestic violence directed toward each other, she attributed D.P.'s injuries to the babysitter. Because there is some evidence of probative force to support the trial court's finding and considering the evidence in a light most favorable to the Department and indulging every reasonable inference in its favor, we conclude the evidence is legally sufficient to support the termination order. Point of error one is overruled.

6

We begin our factual sufficiency review by revisiting the article written by former Chief Justice Robert W. Calvert. He wrote:

> "Insufficient evidence" points may, and should, be sustained when the record discloses either of the following situations: (a) the evidence is factually insufficient to support a finding of a vital fact, or (b) the finding of a vital fact is so contrary to the great weight and preponderance of the evidence as to be clearly wrong.

Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex. L. Rev. 361, 366 (1960). Because no eye-witnesses testified as to who injured D.P. or when and how the injuries occurred, there is little, if any direct evidence regarding these matters. However, even though causation can be established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved by direct evidence, a vital fact may not be established by "piling inference upon inference." *See* Schlumberger Well Sur. Corp. v. Nortex Oil & G. Corp., 435 S.W.2d 854, 858 (Tex. 1968); Roth v. FFP Operating Partners, 994 S.W.2d 190,197 (Tex.App.--Amarillo 1999, pet. denied).

We first address the contention that Cordell engaged in conduct that endangered D.P. which is part of the requirement under section 161.001(1)(E). Termination under this provision may not be based on a single act or omission, but a showing of a course of conduct is required. *See* In Re D.T., 34 S.W.3d 625, 634 (Tex.App.--Fort Worth 2000, no pet.) (reversing on grounds of factual insufficiency). Also, under this section, the cause of the danger to the child must be the parent's conduct alone as shown by actions or

7

omissions or failure to act. *See* Doyle v. Texas Dept. of Pro. And Reg. Serv., 16 S.W.3d 390, 395 (Tex.App.--El Paso 2000, pet. denied) (reversing on grounds of factual insufficiency). Regarding this issue, the Department candidly acknowledges in its brief:

> [w]hile it is impossible to avoid the suspicion that Appellant personally inflicted the child's injuries, there is no direct evidence of that fact in the record.

However, evidence raising a suspicion only is not clear and convincing evidence sufficient to support a finding that Cordell caused the injuries or engaged in conduct that endangered D.P.

We next consider the Department's remaining contentions that under section 161.001(1) (D) and (E), Cordell acted "knowingly," which resulted in endangerment to D.P. As noted above, Cordell testified that she took the child to the emergency room because of prolonged vomiting; however, according to the Department's evidence, no signs of violence or abuse were visible and the injuries were detected only after x-rays. Based on an emergency order obtained by the Department, D.P. was removed from his mother's care while in the hospital and since then D.P. has not been under Cordell's care or control, thereby precluding a determination of knowing endangerment after the child was taken to the hospital. Further, although maternal instincts are strong, without evidence of Cordell's level of medical and infant care training and no visible injuries, knowledge that D.P. had been injured before Cordell took him to the emergency room cannot be based on surmise.

8

Moreover, the Department also acknowledges in its brief that there is "little evidence that the Appellant placed the child in conditions endangering" the child's physical or emotional well-being. It is undisputed that D.P. sustained injuries to his ribs, but there is no evidence showing how, when, nor by whom the child was injured. Although the evidence suggests that the list of persons who could have caused the injuries can be narrowed to Cordell, Podzemny, or the babysitter, where, as here, circumstances are consistent with either of two or more facts and nothing shows that one is more probable than the other, none may be inferred. *Roth*, 994 S.W.2d at 197. Resultantly, absent knowledge of who injured D.P., a finding that Cordell knowingly placed or allowed him to be subject to an unsafe environment or circumstances is not supported by clear and convincing evidence. After reviewing all the evidence and applying the appropriate standard of review, we conclude the evidence supporting termination of Cordell's parental rights has not been demonstrated by clear and convincing evidence and is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Point of error two is sustained.

Accordingly, the judgment is reversed and the cause is remanded to the trial court for a new trial.

> Don H. Reavis
> Justice

Publish.