TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00447-CV






Charles Pairett and Stephanie Pairett, Appellants



v.


Alicia R. Gutierrez and Tammy Taylor, Appellees





FROM THE DISTRICT COURT OF BEXAR COUNTY, 131ST JUDICIAL DISTRICT


NO. 96-CI-17158, HONORABLE JOHN GABRIEL, JUDGE PRESIDING






 Appellants Charles and Stephanie Pairett sued Alicia Gutierrez and Tammy Taylor,
appellees (collectively "Defendants"), for violations of the Texas Deceptive Trade Practices Act
("DTPA"), Tex. Bus. & Com. Code Ann. §§ 17.41-.63 (West 1987 & Supp. 1998); statutory
fraud, Tex. Bus. & Com. Code Ann. § 27.01 (West 1987); common law fraud; and negligent
misrepresentation growing out of the Pairetts' purchase from Defendants of a home with an
allegedly defective foundation. (1) The trial court granted summary judgment on these claims in
favor of Defendants, and this appeal followed. In their sole point of error, the Pairetts assert that
the summary judgment evidence does not conclusively negate the existence of a genuine issue of
material fact or show that Defendants are entitled to judgment as a matter of law. We will reverse
and remand.

FACTUAL AND PROCEDURAL BACKGROUND On November 9, 1992, the Pairetts executed an earnest money contract by which
they agreed to purchase from Defendants a residence in San Antonio. The contract provided that
an "Owner Disclosure Statement" and a "Property Condition Addendum" would constitute part
of the contract. Defendants provided these documents to the Pairetts. The Owner Disclosure
Statement, which was signed by Defendants, contained a representation that the owners were not
aware of any "defects/malfunctions" in the foundation. The Property Condition Addendum
allowed the Pairetts to perform their own inspection and evaluation of the home, including the
foundation, and stated that a failure to provide an inspection report and to designate requested
repairs would waive the buyers' "repair rights." The Pairetts chose not to have the foundation
inspected. The Monday after closing, the Pairetts discovered a crack in the foundation under the
linoleum in the kitchen. This suit followed.

 Defendants' motion for summary judgment stated three grounds: (1) that the
Pairetts purchased the residence "as is"; (2) that Defendants did not owe the Pairetts any duty to
disclose foundation defects because Defendants did not have any knowledge of such defects; and
(3) that Defendants could not have engaged in conspiracy because, again, they had no knowledge
of any defects in the foundation. Defendants sought to prove their lack of knowledge by their own
affidavits, in which they averred that "[a]t no time prior to the sale and closing of the residence
. . . did I have any knowledge of any foundation cracks." In response to Defendants' motion,
the Pairetts presented summary judgment evidence that Defendants made affirmative
representations that they were not aware of any defects in the foundation, that the Pairetts relied
on such representations, that the crack in the foundation had probably been there since the house
was built, that the crack in the floor would have been obvious to anyone familiar with the home,
and that shortly after the transaction one of the Defendants made an unsolicited inquiry to the
Pairetts about problems with the foundation.

 The trial court granted summary judgment in favor of Defendants. The order did
not specify the grounds on which the court relied. The Pairetts perfected this appeal.


DISCUSSION


I. Standard of Review

 In their sole point of error, the Pairetts assert that the trial court erred in granting
summary judgment for Defendants. The standards for reviewing a motion for summary judgment
are well established: (1) the movants for summary judgment have the burden of showing that no
genuine issue of material fact exists and that they are entitled to judgment as a matter of law;
(2) in deciding whether there is a disputed material fact issue precluding summary judgment,
evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference
must be indulged in favor of the nonmovant and any doubts resolved in its favor. Nixon v. Mr.
Property Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985). The function of summary judgment
is not to deprive litigants of the right to trial by jury, but to eliminate patently unmeritorious
claims and defenses. Gulbenkian v. Penn, 252 S.W.2d 929, 931 (Tex. 1952). When an order
granting summary judgment does not specify the grounds on which the court relied, the appellate
court must affirm the judgment if any of the theories raised in the motion for summary judgment
is meritorious. State Farm Fire & Casualty Co. v. S.S., 858 S.W.2d 374, 380 (Tex. 1993).

II. Point of Error

 In response to the Pairetts' sole point of error, Defendants advance the same three
arguments on which they based their motion for summary judgment in the first place. First,
Defendants contend the Pairetts purchased the property "as is," which, if true, could preclude the
Pairetts from proving causation. Second, Defendants argue that they did not owe a duty to
disclose any foundation defects to the Pairetts because they had no knowledge of the crack in the
foundation. Finally, Defendants state that their lack of knowledge of any foundation defects
precludes the existence of any genuine issue of material fact regarding the claim of conspiracy to
commit fraud. We conclude that Defendants have not carried their summary judgment burden as
to any of these grounds.


 A. Duty to Disclose Defects

 Under the DTPA, a seller has no duty to disclose to a buyer defects of which a
seller is unaware. Doe v. Boys Clubs of Greater Dallas, Inc., 907 S.W.2d 472, 479 (Tex. 1995);
Robinson v. Preston Chrysler-Plymouth, Inc., 633 S.W.2d 500, 502 (Tex. 1982). However, a
seller of real estate is under a duty to disclose those material facts which would not be
discoverable by the buyer in the exercise of ordinary care and due diligence. Smith v. National
Resort Communities, Inc., 585 S.W.2d 655, 657-58 (Tex. 1979). Thus, to obtain summary
judgment on this ground, Defendants had the burden to prove conclusively that (1) they had no
knowledge of the defect, and (2) the defect was discoverable by the buyers in the exercise of
ordinary care.

 Defendants have failed to meet this burden, presenting only their own affidavits
stating that neither seller knew of the defects prior to the sale. These affidavits are controverted
by summary judgment evidence presented by the Pairetts. The Pairetts presented summary
judgment evidence that on the Owner's Disclosure Statement, Defendants denied knowledge of
any foundation problems; that the Pairetts relied on these assurances in agreeing to purchase the
residence; that the cracks in the foundation had probably been there since the residence was built
and were obvious enough that a person familiar with the house would have known about them;
and that shortly after the sale, appellee Gutierrez, without solicitation, inquired about foundation
problems. The foregoing evidence is sufficient to raise a fact issue as to whether Defendants
knew of the defects and induced the Pairetts into purchasing the residence through fraudulent
representation or concealment of information. We conclude that a material fact issue remains as
to whether Defendants were aware of the defect and thus owed the buyers a duty to disclose.

 Moreover, summary judgment may be based on the uncontroverted affidavit of an
interested witness only if the evidence is clear, positive, direct, otherwise credible, free from
contradictions and inconsistencies, and could have been readily controverted. Tex. R. Civ. P.
166a(c); Trico Technologies Corp. v. Montiel, 949 S.W.2d 308, 310 (Tex. 1997). Even if they
had been "uncontroverted," Defendants' affidavits are not of such character. As previously
stated, the Pairetts presented evidence raising an inference that Defendants did indeed know of
the defects in the foundation prior to the sale. In addition, the crucial evidence in Defendants'
affidavits--their subjective awareness of the foundation defect--could not have been readily
controverted. At the very least, therefore, the summary judgment evidence as a whole prevents
Defendants' affidavits from satisfying the standard by which a summary judgment may be granted
on the basis of the testimony of an interested witness. See Tex. R. Civ. P. 166a(c).

 Similarly, Defendants have failed to show conclusively that the defect was
discoverable by the Pairetts through ordinary care and due diligence. The Pairetts presented
evidence that neither buyer knew of the foundation defects prior to purchase. Though they did
not exercise their right to inspect the house before purchase, they presented evidence that this
decision was made in reliance on the sellers' assurances that there were no known problems. 
Accordingly, the Pairetts' failure to have an inspection done is not conclusive. In addition,
although the Pairetts' expert testified that the crack in the foundation could have been observed
by anyone, this evidence is not so strong as to prove that the defect was open and obvious as a
matter of law.


 B. Claims of Conspiracy

 In Texas, a civil conspiracy is a combination of two or more persons joining to
accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. Massey
v. Armco Steel Co., 652 S.W.2d 932, 934 (Tex. 1983); Schlumberger Well Surveying Corp. v.
Nortex Oil & Gas Corp., 435 S.W.2d 854, 856 (Tex. 1968). Without knowledge of the object
and purpose of a conspiracy, there can be no meeting of the minds and thus no conspiracy. 
Schlumberger, 435 S.W.2d at 857. As discussed above, however, there is evidence in the
summary judgment record that raises an inference that Defendants were aware of the foundation
defects. While a jury would not be required to believe that evidence or draw that inference, they
would be permitted to. Accordingly, such evidence is not enough for summary judgment. Thus,
Defendants have not shown that the civil conspiracy claim must fail as a matter of law.


 C. The Purchase of the Property "As Is"

 Proof of causation is essential to each of the Pairetts' claims. By purchasing a
residence "as is," a buyer agrees to make his own evaluation of the bargain and to accept the risk
that he could be wrong. Prudential Ins. Co. of Am. v. Jefferson Assoc., Ltd., 896 S.W.2d 156,
161 (Tex. 1995). This evaluation on the part of the buyer constitutes a new and independent basis
for the purchase, one that disavows any reliance upon representations made by the seller. Id. 
However, a buyer is not bound by an "as is" agreement if proof of fraudulent misrepresentation
or concealment of information by the seller is shown. Id. at 162. In such a case, the buyer is not
precluded from recovery against the seller. Id.

 We believe the contract by which the Pairetts purchased the home did not
conclusively negate causation. The Prudential case, on which Defendants rely, is distinguishable. 
There, the relevant contract provision clearly and unambiguously demonstrated the buyer's
agreement to rely solely on his own inspection:


As a material part of the consideration for this Agreement, Seller and Purchaser
agree that Purchaser is taking the Property "AS IS" with any and all latent and
patent defects and that there is no warranty by Seller that the Property is fit for a
particular purpose. Purchaser acknowledges that it is not relying upon any
representation, statement or other assertion with respect to the Property condition,
but is relying upon its examination of the Property. Purchaser takes the Property
under the express understanding there are no express or implied warranties (except
for limited warranties of title set forth in the closing documents).



Id. at 160.

 In the present case, on the other hand, the parties' contract does not contain such
unambiguous language. The relevant contract provision states:


7. PROPERTY CONDITION: (Check one box only)

A. Buyer accepts the Property in its present condition subject to lender required repairs and
the following repairs: 
 


B. Buyer accepts the Property in its present condition subject to lender required repairs and
those repairs designated by Buyer pursuant to the attached Property Condition Addendum.



The Property Condition Addendum informed the Pairetts that they could, at their own expense,
have an inspection done of the foundation and numerous other structural and mechanical systems
and further stated: "Failure of Buyer to furnish written inspection reports and to designate the
repairs to which Buyer is entitled by this contract within the times specified below shall be deemed
a waiver of Buyer's repair rights." Finally, the Property Condition Addendum stated that "Seller
shall only be responsible for treatment and repairs specifically designated or required by Buyer
in accordance with this addendum, subject to the provisions of Paragraph 7 of this contract."

 In evaluating whether this contract is an "as is" contract that conclusively precludes
the Pairetts from showing any reliance or causation, we find the San Antonio Court of Appeals'
opinion in Smith v. Levine, 911 S.W.2d 427, 430-33 (Tex. App.--San Antonio 1995, writ denied),
to be persuasive. In Smith, which also involved the sale of a house with a defective foundation,
the relevant contractual provision stated:

PROPERTY CONDITION (Check A or B)

A. Buyer accepts the Property in its present condition, subject only to any lender required
repairs and "AS IS" 


B. Buyer requires all inspections and repairs required by any lender and the Property
Condition Addendum attached hereto.



Id. at 431. The court in Smith compared the terms in the contract before it with the terms in the
contract before the supreme court in Prudential and concluded that Prudential was not controlling. 
Of particular importance to the court were the facts that the "as is" provision in the contract
before it was silent on the reliance issue and that the record contained evidence that the defendants
knew the foundation was defective but made affirmative misrepresentations regarding its
condition:


As noted by the supreme court, the distinction between Weitzel [v. Barnes, 691
S.W.2d 598 (Tex. 1985)] and Prudential is whether the particular "as is" clause
at issue negates producing cause as a matter of law in the circumstances presented. 
See Prudential, 896 S.W.2d at 164.


 In short, we believe the "as is" clause in this case, like that in Weitzel and
unlike that in Prudential, does not as a matter of law negate causation because the
Smiths knowingly concealed material information and made affirmative oral
misrepresentations to the Levines regarding the condition of the house; the Levines
did not expressly and in writing disclaim their reliance upon these oral
representations; and the Levines testified that, in purchasing the house, they did
in fact rely upon the Smiths' oral misrepresentations.


Smith, 911 S.W.2d at 433.

 The circumstances in the present case are remarkably similar to those in Smith. 
First, the present contract is silent on the issue of reliance; indeed, it does not contain the phrase
"as is" at all in relation to the foundation or overall condition of the house. (2) Next, as discussed
above, the summary judgment evidence raises an inference that Defendants were in fact aware of
problems with the foundation yet made an affirmative representation that they knew of no such
problems. Finally, there is summary judgment evidence that the Pairetts relied on Defendants'
representation in purchasing the house. We conclude that the summary judgment evidence does
not, as a matter of law, show that the Pairetts are precluded from proving causation.


CONCLUSION

 Applying the summary judgment standards set forth above, we conclude that the
Defendants failed to meet their burden of showing that no genuine issue of material fact exists and
that they are entitled to judgment as a matter of law. Having sustained the Pairetts' sole point of
error, we reverse the trial court's judgment and remand the cause to that court for further
proceedings.



 

 J. Woodfin Jones, Justice

Before Chief Justice Carroll, Justices Jones and Kidd; Chief Justice Carroll not participating

Reversed and Remanded

Filed: May 7, 1998

Publish
1. The Pairetts also named as defendants the listing and selling agents and their employers. 
The trial court severed the Pairetts' claims against Gutierrez and Taylor from their claims against
the other defendants.
2. In paragraph 11 of the contract, titled "Special Provisions," the parties inserted the
handwritten words: "Buyer will accept Decking 'as is.'"



er this contract is an "as is" contract that conclusively precludes
the Pairetts from showing any reliance or causation, we find the San Antonio Court of Appeals'
opinion in Smith v. Levine, 911 S.W.2d 427, 430-33 (Tex. App.--San Antonio 1995, writ denied),
to be persuasive. In Smith, which also involved the sale of a house with a defective foundation,
the relevant contractual provision stated:

PROPERTY CONDITION (Check A or B)

A. Buyer accepts the Property in its present condition, subject only to any lender required
repairs and "AS IS" 


B. Buyer requires all inspections and repairs required by any lender and the Property
Condition Addendum attached hereto.



Id. at 431. The court in Smith compared the terms in the contract before it with the terms in the
contract before the supreme court in Prudential and concluded that Prudential was not controlling. 
Of particular importance to the court were the facts that the "as is" provision in the contract
before it was silent on the reliance issue and that the record contained evidence that the defendants
knew the foundation was defective but made affirmative misrepresentations regarding its
condition:


As noted by the supreme court, the distinction between Weitzel [v. Barnes, 691
S.W.2d 598 (Tex. 1985)] and Prudential is whether the particular "as is" clause
at issue negates producing cause as a matter of law in the circumstances presented. 
See Prudential, 896 S.W.2d at 164.


 In short, we believe the "as is" clause in this case, like that in Weitzel and
unlike that in Prudential, does not as a matter of law negate causation because the
Smiths knowingly concealed material information and made affirmative oral
misrepresentations to the Levines regarding the condition of the house; the Levines
did not expressly and in writing disclaim their reliance upon these oral
representations; and the Levines testified that, in purchasing the house, they did
in fact rely upon the Smiths' oral misrepresentations.


Smith, 911 S.W.2d at 433.

 The circumstances in the present case are remarkably similar to those in Smith. 
First, the present contract is silent on the issue of reliance; indeed, it does not contain the phrase
"as is" at all in relation to the foundation or overall condition of the house. (2) Next, as discussed
above, the summary judgment evidence raises an inference that Defendants were in fact aware of
problems with the foundation yet made an affirmative representation that they knew of no such
problems. Finally, there is summary judgment evidence that the Pairetts relied on Defendants'
representation in purchasing the house. We conclude that the summary judgment evidence does
not, as a matter of law, show that the Pairetts are precluded from proving causation.


CONCLUSION

 Applying the summary judgment standards set forth above, we conclude that the
Defendants failed to meet their burden of showing that no genuine issue of material fact exists and
that they are entitled to judgment as a matter of law. Having sustained the Pairetts' sole point of
error, we reverse the trial court's judgment and remand the cause to that court for further
proceedings.