In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-08-443 CV


____________________



CREDIT SUISSE SECURITIES (USA) LLC AND


DEUTSCHE BANK SECURITIES, INC., Appellants



V.



HUNTSMAN CORPORATION, Appellee


 




On Appeal from the 9th District Court


Montgomery County, Texas


Trial Cause No. 08-09-09258-CV 






OPINION



 Credit Suisse Securities (USA) LLC and Deutsche Bank Securities, Inc., (collectively,
"the Banks") appeal the granting of a temporary injunction in a suit brought against the
Banks by Huntsman Corporation. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4)
(Vernon 2008). We hold that the trial court did not abuse its discretion by issuing the
temporary injunction. Accordingly, we affirm the trial court's order.



Background


 The present suit arises from the pending merger between Huntsman and Hexion
Specialty Chemicals, Inc. The merger is set to close on October 28, 2008, and the Banks are
obligated to fund the transaction subject to certain conditions as provided in a commitment
letter dated July 11, 2007. One of the conditions required by the commitment letter as a
condition precedent to funding is the delivery of reasonably satisfactory solvency certificates
for the company formed in the merger.

 Huntsman and Hexion, and Hexion's related entities (including Apollo Global
Management, LLC), were parties to a suit in Delaware that addressed the pending merger. 
On September 29, 2008, the Delaware Chancery Court issued an opinion stating that Hexion
had failed to demonstrate the existence of a material adverse effect in order to negate
Hexion's obligation to close, that Hexion had engaged in a knowing and intentional breach
of the merger agreement, and that Hexion had pursued a path designed to avoid the
consummation of financing the transaction. The court further found that Hexion failed to
meet its obligations to Huntsman under the merger agreement's notification covenant and
that filing the Delaware lawsuit had placed the commitment letter in peril.

 In Huntsman's present suit against the Banks, filed in Texas, Huntsman asserts claims
against the Banks for common law and statutory fraud, tortious interference with an earlier
merger that Huntsman cancelled in order to accept Hexion's proposal, tortious interference
with the Hexion merger agreement, negligent misrepresentation, and civil conspiracy. 
Huntsman seeks temporary and permanent injunctive relief in addition to money damages. 
According to Huntsman, monetary damages for the tortious interference is an inadequate
remedy because the committed financing for the merger cannot be replicated. Huntsman
alleges the Banks have contrived to "run out the clock" on the commitment letter in order to
force its expiration before Huntsman can exercise its rights, including its right to present a
solvency certificate.

 After taking evidence and hearing the arguments of counsel, the trial court enjoined
the Banks from filing any declaratory judgment suit "that directly or indirectly alleges that
the combination of Hexion and Huntsman would be insolvent or would be in any way
incapable of performing its obligations to pay off the notes to the banks." (1)

 The Banks raise five issues in their appeal: (1) Whether the trial court erred and
abused its discretion by misapplying the law to established facts in holding that the Banks'
prospective lawful conduct of filing a legitimate lawsuit can be an act of tortious
interference; (2) Whether the trial court erred and abused its discretion by issuing an anti-suit
temporary injunction when there was no showing of the limited circumstances in which an
anti-suit injunction is permitted, and where the injunction extends to prohibit federal
lawsuits, which the court lacks the power to enjoin; (3) Whether the trial court erred and
abused its discretion by issuing a temporary injunction that alters, rather than preserves, the
status quo and essentially grants to the plaintiff all of the injunctive relief that it would be
entitled to if it were successful in a trial on the merits without requiring it to prove the merits
of its claims; (4) Whether the trial court erred and abused its discretion by issuing a
temporary injunction when all of the claimed injuries would be compensable with money
damages; and (5) Whether the trial court erred and abused its discretion by issuing a
temporary injunction where Huntsman had not shown a probable right to relief. 

Standard of Review


 "To obtain a temporary injunction, the applicant must plead and prove three specific
elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; 
and (3) a probable, imminent, and irreparable injury in the interim." Butnaru v. Ford Motor
Co., 84 S.W.3d 198, 204 (Tex. 2002). To establish a probable right to recovery, the applicant
is not required to establish that it will prevail on final trial, but need only plead a cause of
action and show a probable right to the relief sought. Id. at 211. "An injury is irreparable
if the injured party cannot be adequately compensated in damages or if the damages cannot
be measured by any certain pecuniary standard." Id. at 204. "A reviewing court should
reverse an order granting injunctive relief only if the trial court abused that discretion." Id. 
"The reviewing court must not substitute its judgment for the trial court's judgment unless
the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion." 
Id. "The trial court does not abuse its discretion if some evidence reasonably supports the
trial court's decision." Id. at 211.

Ripeness


 The question of ripeness affects our resolution of issues one and two. In this case, the
injunction issued by the trial court prohibits the Banks from filing suit to request a court to
declare whether the merged entity, which does not yet exist, and which would presumably
not be in existence on the date of the declaration, would be insolvent. The Banks argue that
they are entitled to have a court in New York address that issue. Huntsman, on the other
hand, argues that the issue is not yet ripe for adjudication.

 The Banks' obligation to fund the Hexion/Huntsman merger arises under a letter
agreement between Hexion, the buyer, and the Banks. The Banks complain that the
injunction interferes with their right to access the courts in New York. Although the
commitment letter has a New York forum selection clause, it does not follow that any suit
filed by the Banks in New York would be proper. New York's declaratory judgment statute
requires a justiciable controversy. N.Y. C.P.L.R. Law § 3001 (2008). The Banks argue that
the trial court misapprehended "both the facts and the law" in deciding to grant the
injunction. The Banks argue that they can exercise a "legal right in a legal way" and no
subsequent injury to a non-party is actionable. This is a correct statement; however, we do
not agree that the Banks have a legal right to file a lawsuit to determine an issue that is not
yet ripe for adjudication. We conclude that whether the merged entity will be solvent on a
future date is at present not a justiciable controversy. Because injunctive relief includes the
power to prevent the filing of vexatious or harassing lawsuits, the trial court, on this record,
could enjoin the filing of a non-justiciable claim. Consequently, we hold that the trial court
did not abuse its discretion and overrule issue one.

 In their second issue, the Banks contend there was no showing of the limited
circumstances in which an anti-suit injunction is permitted. An anti-suit injunction is
appropriate: (1) to address a threat to the court's jurisdiction; (2) to prevent the evasion of
important public policy; (3) to prevent a multiplicity of suits; or (4) to protect a party from
vexatious or harassing litigation. Golden Rule Ins. Co. v. Harper, 925 S.W.2d 649, 651 (Tex.
1996). "There are no precise guidelines for determining the appropriateness of an anti-suit
injunction or for deciding whether comity should be invoked. The circumstances of each
situation must be carefully examined to determine whether the injunction is required to
prevent an irreparable miscarriage of justice." Gannon v. Payne, 706 S.W.2d 304, 307 (Tex.
1986). We review the trial court's ruling for abuse of discretion. Christensen v. Integrity
Ins. Co., 719 S.W.2d 161, 163 (Tex. 1986).

 The Banks argue the trial court's jurisdiction would not be threatened by a declaratory
judgment action filed in New York concerning the commitment letter because this Texas suit
concerns only the merger agreement. They argue that no public policies are implicated by
issues concerning the enforcement of statutory and contractual rights and forum selection
clauses and that a single parallel proceeding would not qualify as a multiplicity of suits. 
Because Huntsman would not necessarily be a party to a New York declaratory judgment
action, and Huntsman has already demonstrated its willingness to litigate by filing claims in
Texas and Delaware, the Banks argue that their proposed New York declaratory judgment
action cannot be considered to be vexatious or harassing. Furthermore, the Banks contend
the trial court lacks the power to restrain federal court proceedings.

 The Banks' argument that a New York declaratory judgment action would not be
vexatious or harassing must be considered in light of the narrow scope of the injunctive relief
granted by the trial court in this case. The trial court enjoined the Banks only from a
declaratory judgment suit "that directly or indirectly alleges that the combination of Hexion
and Huntsman would be insolvent or would be in any way incapable of performing its
obligations to pay off the notes to the banks."

 The commitment letter provision that required a solvency certificate states the
following:

 The [Banks] shall have received (i) customary and reasonably
satisfactory legal opinions, corporate documents and certificates (including a
certificate from the chief financial officer of [Hexion] or the chief financial
officer of [Huntsman] or an opinion from a reputable valuation firm with
respect to solvency (on a consolidated basis) of [Hexion] and its subsidiaries
on the Closing Date after giving effect to the Transactions) (all such opinions,
documents and certificates mutually agreed to be in form and substance
customary for recent financings of this type with portfolio companies
controlled by affiliates of or funds managed by [Apollo]). . . . 


 First, we note that the commitment letter does not grant the Banks a right to obtain
a prospective judicial determination of the future solvency of the merged corporation and
there is no present controversy between Hexion and the Banks over whether a yet-to-be
issued solvency certificate would satisfy that condition of the parties' agreement.

 Second, the Banks have identified no presently existing dispute regarding the
construction of this contractual language and no present controversy exists over whether
documents that will be produced at closing will satisfy this particular condition precedent. 
The trial court heard testimony from Credit Suisse to the effect that the Banks can determine
by an objective standard and in the normal course of business whether a solvency certificate
is reasonably satisfactory; therefore, the Banks would not need a New York court to
determine for them whether a company is solvent. Based on the merger agreement, it appears
to us that the question of the solvency of the merged corporations appears relevant at (or as
of) closing. The Delaware court which interpreted the same merger agreements in a
Delaware suit between Huntsman and Hexion stated:

 the court will not now resolve the question of whether the combined entity
would be solvent or not. That issue may arise in the future in the course of this
litigation or some related action, but it is not now properly framed by the terms
of the merger agreement and the status of the transaction. Thus, the issue is
not ripe for a judicial determination.

 

 Of course, the Banks were not parties in the Delaware action. Nevertheless, the facts
before the Delaware court are substantially the same as those presented to the trial court in
this case. Additionally, the Banks did not show the trial court that any event had occurred
in the interim to cause the solvency issue to ripen into a justiciable controversy. When the
trial court considered whether to grant a temporary injunction, the Banks had not determined
that the merged company would be insolvent or that the solvency letter that would be
provided at closing would not meet the condition precedent in the commitment letter. 
Because the existence of a justiciable controversy between Hexion and the Banks would
necessarily be dependent upon an event - the delivery of a solvency certificate by third
parties beyond the control of the Banks - the trial court could have determined that a
declaratory judgment suit that alleges that the merged company would be insolvent or would
be incapable of performing its obligations to pay off the notes to the banks would not be ripe
for judicial determination under New York's declaratory judgment statute at any time before
the closing date. See N.Y. Pub. Interest Research Group, Inc. v. Carey, 369 N.E.2d 1155,
1158 (N.Y. 1977)(where the issue was not whether to submit the proposition to the voters
but whether the statute would be constitutional if passed, a declaratory judgment action was
not ripe and dismissal was required). The courts of New York, like the courts of Texas, do
not give advisory opinions. Id. at 1158; see also Tex. Const. art. II, § 1. Where the
potential New York action would not be ripe because it would not present a justiciable
controversy, and considering the evidence before the trial court, it was within the discretion
of the trial court to conclude that filing such an action would be vexatious and harassing.

 The Banks also argue for the first time on appeal that the trial court improperly
enjoined a federal court. The Banks are the only party enjoined by the trial court's order, no
federal court action has been filed, and Huntsman contends that a federal court would not
have jurisdiction over the claims because the potential parties lack complete diversity. Under
the exceptional circumstances presented here, we believe the trial court could prevent the
Banks from filing a suit aimed at vexatiously frustrating Huntsman's ability to procure the
necessary solvency certificate and at delaying the closing beyond the commitment letter's
expiration date. We overrule issue two.

Status Quo


 The Banks' third issue contends the temporary injunction fails to preserve the status
quo, but grants all the injunctive relief the plaintiff would be entitled to if it were successful
in a trial on the merits. The status quo is "the last, actual, peaceable, noncontested status
which preceded the pending controversy." Transport Co. of Tex. v. Robertson Transports,
Inc., 152 Tex. 551, 261 S.W.2d 549, 553-54 (1953). The Banks contend the trial court
altered the status quo by restraining the filing of a declaratory judgment action in New York. 
As Huntsman notes, however, no suit had been filed in New York when the trial court
entered the injunction. The injunction is designed to preserve the status quo by preventing
the Banks from seeking a solvency determination in a judicial proceeding in which Huntsman
would not be a party. The last, peaceable, non-contested status of the parties placed them
with a commitment letter and merger agreement in place and with no active suit to determine
solvency. Furthermore, the Banks admitted to the trial court that the Banks had not yet
determined that they had received sufficient information to determine that the merged
company would not be solvent. We hold the trial court did not abuse its discretion by
entering an injunction intended to preserve the status quo between the parties. We overrule
issue three.

Irreparable Harm


 In their fourth issue, the Banks challenge the trial court's finding of irreparable harm. 
The Banks argue that any injuries to Huntsman would be compensable with money damages. 
This suit is an action for tortious interference and fraud by the Banks, not a breach of contract
action against Hexion. The trial court heard testimony that the allegedly interfered-with
merger agreement is irreplaceable if the merger fails to close before the commitment letter
expires. Furthermore, the trial court heard testimony that the mere filing of the Hexion
lawsuit had a negative effect on Huntsman's business, causing customers and investors to
doubt Huntsman's solvency and putting the long-term viability of the company in jeopardy. 
This testimony is some evidence from which the trial court could find that the injury to
Huntsman could not be adequately compensated in damages or that Huntsman's damages
cannot be measured by any certain pecuniary standard. See Butnaru, 84 S.W.3d at 204. We
overrule issue four.

Parent/Subsidiary Claim
 

 The final issue challenges the evidentiary support for Huntsman's application for a
temporary injunction. The Banks argue that a parent cannot tortiously interfere with its
subsidiary so the Banks cannot be sued for conspiring with Apollo to interfere with the
Hexion-Huntsman merger. See Grizzle v. Texas Commerce Bank, N.A., 38 S.W.3d 265, 286
(Tex. App--Dallas 2001)(holding the interests of a parent corporation and its wholly owned
subsidiary were so closely aligned as to eliminate their separate identity for purposes of
tortious interference), rev'd on other grounds, 96 S.W.3d 240 (Tex. 2002). The Banks also
argue there is no evidence that the Banks conspired with Apollo. See Schlumberger Well
Surveying Corp. v. Nortex Oil & Gas Corp., 435 S.W.2d 854, 858 (Tex. 1968)(holding that
conspiracy may be proven through circumstantial evidence but burden of proof cannot be
sustained through inference stacking).

 The Banks understate the quality of the evidence developed at the temporary
injunction hearing. First, the inferences drawn by the trial court do not amount to "inference
stacking." For instance, the Banks had meetings without notice to Huntsman about changing
the terms of the financing. From that direct evidence a direct inference may be drawn that
the Banks knew that Huntsman was unaware of the meeting. 

 Our review of the record reveals some evidence supports the trial court's finding on
probable right of recovery. For instance, the trial court heard evidence that would allow it
to reach the conclusion that terms of the Banks' commitment were material in inducing
Huntsman to abandon its merger under a prior agreement with another entity and enter into
the merger agreement with Hexion. The commitment letter states that the obligations of the
financing sources to fund the commitments are not subject to any conditions other than as set
forth in the commitment letter. The merger agreement required Hexion to keep Huntsman
informed with respect to all material activity concerning the status of the financing. Yet
Huntsman produced evidence that the Banks and Apollo had an undisclosed agreement from
the outset to vary from the terms of the commitment letter. The Banks claim Huntsman
failed to demonstrate that Apollo and the Banks reached a meeting of the minds on a course
of action at their April 2008 meeting in which the Banks proposed a restructuring of the
supposedly "tight" financing commitment. Huntsman showed the trial court that Hexion
altered its course of conduct after that meeting and took affirmative steps that were intended
to avoid fulfilling the terms required by the merger.

 We also find unpersuasive the Banks' arguments regarding Apollo's status as
Hexion's parent. Huntsman's claims against the Banks are not wholly dependent on the
alleged conspiracy with Apollo, but include claims that the Banks directly interfered with
Huntsman's merger contracts. Furthermore, the issue of whether Hexion and Apollo operate
as a single business enterprise was not established in the trial court. We overrule issue five.

 We hold that the trial court did not abuse its discretion in granting the temporary
injunction. The trial court's order granting a temporary injunction is affirmed. The mandate
will issue with the judgment of the Court. See Tex. R. App. P. 18.6.

 AFFIRMED.


 _____________________________

 STEVE McKEITHEN

 Chief Justice



Submitted on October 21, 2008

Opinion Delivered October 23, 2008


Before McKeithen, C.J., Kreger and Horton, JJ.
1. The record is somewhat confusing, as a document titled "Final Judgment" states that
Huntsman's application for temporary injunction is denied and its suit is dismissed. 
This document is dated the same date as the temporary injunction. The bottom of the
document is stamped "DENIED." Although at first glance it appears the trial court dismissed
all of Huntsman's claims, the record of the hearing reveals that the trial court denied the
Banks' motion to dismiss then granted Huntsman's application for temporary injunction. 
The stamp "DENIED" shows the relief described in the body of the document was not being
granted.