Paul SNELL, Appellant,

v.

Jesse A. SEPULVEDA d/b/a Sepulveda & Johnson, Appellee.

No. 04–01–00026–CV.

Court of Appeals of Texas, San Antonio.

March 20, 2002.

Cheryl D. Smith, Law Offices of Cheryl D. Smith, Fort Worth, for appellant.

Jesse A. Sepulveda, Kerby A. Johnson, Sepulveda & Johnson, San Antonio, for appellee.

Sitting: PHIL HARDBERGER, Chief Justice, PAUL W. GREEN, Justice, SANDEE BRYAN MARION, Justice.

## OPINION

PAUL W. GREEN, Justice.

This case is about whether the statute of limitations bars a claim of tortious interference with a legal services contract. The action was filed more than two years after the wrongful conduct. The question is whether the discovery rule applies to defer the running of the two-year limitations period when the injured party did not discover the wrongful conduct until after it occurred, and the wrongful conduct was neither fraudulently concealed nor inherently undiscoverable. We hold the discovery rule does not apply in this case. The trial court's judgment is reversed.

### Background

Herlinda Acuna, Teresa Gonzales, and Diana Rodriguez ("the clients") were injured in an automobile accident in August 1995. They sought legal counsel and were referred to attorney Jesse A. Sepulveda by Jaime Rivera, who worked for Sepulveda. On October 20, 1995, the clients signed legal services contracts with Sepulveda to represent them in their claims for damages arising out of the accident ("the claims"). In December 1995, Sepulveda sent a demand letter to the claims adjuster for the insurance company of the other driver in the accident. Several attempts to settle the claims were unsuccessful. When Sepulveda again contacted the adjuster in late January 1996, he was told the claims were settled on January 19, 1996 by attorney Paul Snell ("Snell") through his employee, Rivera. Rivera had begun working for Snell after leaving Sepulveda's employ in the fall of 1995. Rivera had brought the clients to Snell, who signed them to his own legal services contracts on or about January 8, 1996. Sepulveda did not know until the time of trial that Snell had signed-up the clients on January 8, but he admitted he knew it occurred before the January 19 settlement.

Sepulveda filed suit against Snell on January 20, 1998, alleging tortious interference with contract. Snell answered and asserted limitations as an affirmative defense. Following a non-jury trial, the trial court entered judgment in favor of Sepulveda in the amount of $6,666.59, plus interest.

### Discussion

Snell contends the trial court erred in denying his motion for directed verdict because Sepulveda's tortious interference claim was barred by limitations. Snell asserts that Sepulveda's claim accrued at the latest on January 8, 1996 when the clients signed contracts with Snell. Sepulveda contends the cause of action accrued no earlier than January 19, 1996, the date Snell settled the claims. And even though the suit appears to have been filed one day late, Sepulveda says it was timely filed because January 19, 1998 was a legal holiday. *See* Tex.R.App. P. 4.1.

Generally, a cause of action accrues, and the limitations period begins running, when a wrongful act causes some legal injury, even if the fact of injury is not

discovered until later. *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex.1996). All claims are treated in accordance with this "legal injury rule" unless the discovery rule applies. Under the discovery rule, accrual of a cause of action will be deferred if: 1) the cause of action is not discovered as a result of fraud or fraudulent concealment; or 2) the cause of action is one that is "inherently undiscoverable." *Id.* at 6. Determining when a cause of action accrues is a question of law. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 567 (Tex. 2001). A two year limitations period applies to tortious interference with contract claims. *First Nat'l Bank v. Levine*, 721 S.W.2d 287, 288 (Tex.1986).

 It is undisputed that Snell signed the clients to contracts in derogation of Sepulveda's contractual rights on or about January 8, 1996, or at least sometime before the January 19, 1996 settlement. Consequently, Sepulveda's lawsuit, filed on January 20, 1998, is time-barred unless the discovery rule defers the running of limitations. Generally, the discovery rule must be affirmatively pled for a party to assert it. *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517–18 (Tex.1988); *Pitman v. Lightfoot*, 937 S.W.2d 496, 510 (Tex.App.—San Antonio 1996, writ denied). Sepulveda failed to plead the discovery rule, and it was not an issue in the trial of the case. Sepulveda made no attempt to show either that Snell fraudulently prevented Sepulveda from knowing about his actions in contracting with the clients, or that the injury was of a type that is inherently undiscoverable.

The dissent, however, would apply the discovery rule in the absence of pleading, contending the matter was tried by consent. But the only evidence cited to support this contention is that Sepulveda testified without objection that he did not "discover" what Snell had done until the claims adjuster told him in late January 1996 that Snell had settled the clients' cases.

As previously noted, it is well-settled that a cause of action accrues at the time the legal injury occurs, "even if the fact of injury is not discovered until later." *S.V.*, 933 S.W.2d at 4. The fact that Sepulveda found out about Snell's conduct after it had occurred does not defer the running of limitations when the actual date of the tortious conduct was easily discoverable and was not fraudulently concealed.

### CONCLUSION

Snell's actions gave rise to a legal injury when the clients gave him the contractual right to settle their claims contrary to the authority previously given Sepulveda. This event occurred before January 19, 1996. Sepulveda's claim is, therefore, time-barred because he failed to plead or prove any basis for deferring the running of limitations. In view of our holding, it is unnecessary to address Snell's legal insufficiency issue.

The trial court's judgment is reversed and a take-nothing judgment is rendered in favor of Snell.

PHIL HARDBERGER, Chief Justice, dissenting.

The majority concludes that the discovery rule does not apply in this case because Sepulveda "failed to plead or prove any basis for deferring the running of limitations." I respectfully dissent.

The majority asserts, "It is undisputed that Snell signed the clients to contracts in derogation of Sepulveda's contractual rights on or about January 8, 1996, or at least sometime before the January 19, 1996 settlement." However, the record does not support the assertion that these dates are "undisputed." Although Snell

testified that Acuna, Gonzales, and Rodriguez entered into contracts on January 8, 1996 for Snell to represent them, Snell was unable to introduce the contracts into evidence because he was only able to locate "remnants" of the clients' files. Furthermore, although there was some testimony regarding the January 19, 1996, settlement date, no documentary evidence was introduced to prove the date of settlement, and Snell testified as follows:

Q. Would you agree with me that Herlinda Acuna, Teresa Gonzales and Diana Rodriguez, all their cases settled on January 19th, 1996?

A. I don't recall when they settled.

Q. Okay. And why is it that you don't remember?

A. I mean, it was four years ago.

Q. Okay. And is there any documentation in any file that would give you that information?

A. I don't recall.

Q. Okay.

A. Your pleading indicates that it did, they did.

Q. When is the last time you reviewed any of their files?

A. Two months ago.

Q. All right. And in the review of the files two months ago did you see any notations that the—the settlements took place on January 19th, 1996?

A. No.

Q. Okay. Was there any—any dates indicated as far as when the settlements took place?

A. No.

\* \* \* \* \* \*

Q. Are you aware that the three—Diana Rodriguez, Herlinda Acuna, Teresa Rodriguez, that their cases settled on January 19, 1996?

A. I've heard someone testify to it, I believe.

Q. Okay. And do you have any reason to disagree with that date?

A. I just don't know when they did.

In view of the absence of documentary evidence and Snell's equivocal testimony, the record with regard to the date Snell was retained and the settlement date are not "undisputed."

The real issue presented, however, is whether the accrual of Sepulveda's cause of action was deferred by the discovery rule. The discovery rule defers accrual of a cause of action until the plaintiff knows or, by exercising reasonable diligence, should know of the facts giving rise to the claim. *Wagner & Brown, Ltd. v. Horwood,* 58 S.W.3d 732, 734 (Tex.2001). The majority recites, "Under the discovery rule, accrual of a cause of action will be deferred if: 1) the cause of action is not discovered as a result of fraud or fraudulent concealment; or 2) the cause of action is one that is 'inherently undiscoverable.'"

The majority contends that the only evidence to support the application of the discovery rule is Sepulveda's testimony that he did not discover what Snell had done until the claims adjuster told him in late January of 1996 that Snell had settled the clients' cases. However, the record contains a great deal more evidence.

The record contains the testimony of Snell's legal assistant/office manager, Janie Garcia. Ms. Garcia testified that Rivera would bring files to Snell where the clients were already represented by another attorney and Snell was aware of this prior representation. The record also contains Snell's testimony that he was aware that Sepulveda represented Acuna, Gonzales and Rodriguez and that he told the clients that they needed to discharge Sepulveda before retaining Snell. Although

Snell testified that discharge letters were drafted and sent, Snell was unable to introduce any documentary evidence that the letters were sent (similar to Snell's inability to introduce any documentary evidence of the contracts he entered into with the clients).[1] The record further contains Sepulveda's testimony that he did not receive any discharge letters. Finally, the record contains Sepulveda's testimony that he did not discover that Snell had settled the clients' claims until the latter part of January of 1996, when the adjuster informed him that Snell settled the claims on January 19, 1996. All of the testimony regarding when the discharge letters were sent, if ever, relates in part to the application of the discovery rule.[2]

---

1. In response to questioning, Snell testified that he did not recall a green card or a facsimile receipt in the file. Snell admitted that he did not have any physical proof of a letter discharging Sepulveda other than his recollection that he saw it, read it, and directed the office employee to fax it to Sepulveda. Janie Garcia, Sepulveda's legal assistant/office manager, testified that she did not send the letter.

2. Sepulveda testified that he never received any communication from the clients informing him that he was being fired. Sepulveda further testified:

Q. Okay. When is the next time you had a conversation with Domingo Garcia following January 3rd?

A. It was the latter part of January. I called Mr. Garcia again to try to get a settlement offer, and he told me that it had been settled on January 19th by Paul Snell's office. I—I was shocked because I had not received any discharge letters from any of the clients and I was completely surprised. And he said he had dealt with Jaime Rivera at Paul Snell's office.

Q. Okay. And what did you do after you got that information?

A. Well, I—I called Jaime Rivera.

\* \* \*

Q. Okay. And what did you and Mr. Rivera discuss about the claims?

A. Well, I said I'm calling about these three claims. Why did you settle it? It's my case. And he said, Well—

(Objections and rulings)

Q. What was the gist of your conversation?

A. I was just upset because he—he had settled these claims, they were—they were my cases. I had negotiated, I had written the demand, I had conferred with—or I had discussed the claims with Domingo Garcia and then he goes and settles it at Paul Snell's office. And he said, Well, they—they wanted to come to Snell's office. And I said—and he said something about a discharge letter. And I said, You fax it over to me. And I—to this day I have not received a discharge letter of any kind.

\* \* \*

Q. When did you first talk to Mr. Snell about this situation?

A. It was shortly after I found out from Domingo Garcia that they had been settled which was the latter part of January of '96.

Q. Okay. And what did you and Mr. Snell discuss?

A. Well, I—I told him that I had done the work on the case, I had written the demand, I had negotiated with Domingo Garcia personally and I didn't think it was fair that he get a third of attorney's fees for work that I had done. And he said that he would, you know, talk to Jaime and talk to Janie Garcia and that he would get back to me. And all he ever did was send me the $500 advance that I gave to the clients.

\* \* \*

Q. Isn't it true that you named all these people in this lawsuit but you never— Have you even talked to these ladies since this lawsuit was filed?

A. After talking to Domingo Garcia I was told that—that Paul Snell had settled it. Like I said, I was shocked. I called Jaime Rivera. I called Paul Snell and I— I spoke to one of the ladies. I don't recall who it was, and I was—I was surprised. It's like, I don't understand. How did you—all settle this thing? You've never discharged me.

\* \* \*

Q. And when you talked to Jaime you learned that they had actually signed contracts with Paul Snell; is that correct?

A. According to Jaime.

The record, therefore, contains evidence that Snell was aware of his duty to notify Sepulveda that the clients had discharged him; however, the record contains no documentary evidence that Snell in fact notified Sepulveda. Snell testified that he instructed his "office employee" to fax the discharge letter; however, Janie Garcia, Snell's legal assistant/office manager, testified that she did not send the letter. Whether this failure to notify Sepulveda is considered an act of fraud or fraudulent concealment or whether we acknowledge that in the absence of such notification the retention of Snell's services by Sepulveda's clients would be inherently undiscoverable until Sepulveda's conversation with the adjuster, the discovery rule applies to this case. *See S.V. v. R.V.*, 933 S.W.2d at 6 (noting discovery rule applies if cause of action not discovered as a result of fraud or fraudulent concealment or if cause of action is inherently undiscoverable). Because Snell failed to raise the lack of pleading with respect to the discovery rule before the submission of the case, he is prohibited from raising the pleading deficiency for the first time on appeal. *See Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 495 (Tex.1991). Because all of the aforementioned evidence relating to

the application of the discovery rule was introduced without objection, the application of the discovery rule was tried by consent. *Parker v. Parker*, 897 S.W.2d 918, 929 (Tex.App.—Fort Worth 1995), *overruled on other grounds, Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc.*, 960 S.W.2d 41 (Tex. 1998).

In view of the evidence presented at trial, I respectfully dissent to the majority's holding that Sepulveda's claim was time-barred.

Q. Yes. And you learned that was October—January 8th of 1996, the signed contracts?

A. No, he never told me that.

Q. But you knew at some point.

A. If—if he would have told me that, I would have never called Domingo up in the end of January because I would have known.

Q. No, but when you—

A. So I was surprised that they settled the claim. I called them the end of January—If he'd notified me January 8th, I would have known what was going on. That makes no sense.

Q. Right. But after that period of time when you learned the case was settled, you did come to learn that the contracts were signed on January 8th, 1996?

A. No, I didn't. I never knew that. I didn't know that until today when you said that earlier.

Q. Well, you knew that they had gone over there to Snell's office some time before the day the case was settled; is that correct?

A. Well, I knew they must have but I didn't know when. I asked for a copy of the—of the discharge letter because I never received anything and nothing was ever faxed to me, and to this day I haven't seen anything and you don't have anything. You don't have a discharge letter discharging me as the attorney because if one was made Jaime probably wrote it up, I don't think the clients did it, and I even have doubts about that.