Opinion issued June 10, 2010.



 

In
The

Court of Appeals

For
The

First District of Texas

 

———————————

 

NO. 01-08-00715-CV

 

———————————

 

JOSEPH SHUNTA, Appellant

 

V.

 

GORDON WESTERGREN, D.T. PROPERTIES, INC.,
DOYLE TOUPS, AND GRUBB & ELLIS, Appellees



 



 

On Appeal from the 133rd District

Harris County, Texas

Trial Court Case No. 2006-43603



 



 

MEMORANDUM OPINION

          Appellant, Joseph
Shunta, appeals from a summary judgment in favor of appellees, Gordon
Westergren, D.T. Properties, Inc., Doyle Toups, and Grubb & Ellis.  In nine issues, Shunta asserts the trial
court erred by excluding certain evidence and by awarding summary judgment
because Shunta has standing to sue; Shunta’s contract is valid; appellees’
affirmative defenses of absolute privilege, legal justification, release, res
judicata, and statute of limitations are invalid; and Shunta presented evidence
of civil conspiracy and causation.  We
conclude the error, if any, in excluding evidence was harmless.  We also conclude Shunta has standing to
sue.  Furthermore, the trial court
properly rendered summary judgment on the tortious interference with contract
claim based on the statute of limitations and on the civil conspiracy claim
based on no evidence of a conspiracy.  We
affirm.

Background

          On May 5,
2004, Westergren entered into an earnest money contract with La Porte 81, 82,
and 115, Ltd. (“La Porte”) for the purchase of 190 acres.  The closing under this contract was to occur
by June 19, 2004.  The next day, May 6,
2004, another potential purchaser, Fogarty, entered into an earnest money
contract with La Porte.  The Fogarty
contract covered 175 acres of the 190 acres covered in the Westergren contract.  Shunta was listed as a broker in the Fogarty
contract.  After entering into the May
2004 contract, Fogarty learned of the Westergren contract.  Fogarty, therefore, did not go forward under
the Fogarty contract but waited to see if Westergren would close under the
Westergren contract. 

          Westergren
did not close on June 19, 2004. 
Westergren asked Fogarty for “a few days” to close the deal before
Fogarty purchased the property.  Fogarty
agreed.  However, Westergren did not
attempt to close on the property, but filed suit and a notice of lis pendens[1] on July 9, 2004.  On or about July 19, 2004, La Porte and
Fogarty entered into another earnest money contract for the property.  Shunta was listed as the broker, entitled to
receive a six-percent commission. 
Fogarty was served with Westergren’s suit on July 29, 2004.  Fogarty and La Porte asserted various
cross-claims against one another in the Westergren suit.

          On October 6,
2004, while Westergren’s suit was pending, D.T. Properties, Inc., a company
controlled by Toups, entered into a contract with La Porte for the property at
issue in the Westergren suit.  The
contract contained a provision stating,

This contract is
contingent upon [D.T. Properties] obtaining a dismissal with prejudice of
Gordon Westergren’s lawsuit against La Porte 81, Ltd.; Stuart Haynsworth individually
and as General Partner of La Porte 81, Ltd.; and Joe Fogarty and his property
interests.  Said dismissal being in
writing and filed with the court clerk.

 

Westergren’s suit settled at mediation on January 17,
2006.  The property was sold to a development
company not a party to the suit.  As part
of the settlement, Westergren, La Porte, Haynsworth, Fogarty, Toups, and D.T.
Properties, Inc. each executed releases for all claims “arising from, [or]
related to, the events and transactions which are the subject matter of this
case.” 

          On July 14,
2006, Shunta sued Westergren, D.T. Properties, Inc., Doyle Toups, and Grubb
& Ellis.  Shunta asserted claims for
tortious interference with contract and civil conspiracy.  Westergren filed a motion for summary judgment.  Later Toups and D.T. Properties filed a
motion for summary judgment, followed by Grubb & Ellis filing its own
motion.  Both these motions largely
mirrored Westergren’s motion for summary judgment.  The trial court granted the motions, without
specifying the grounds for summary judgment. 


Excluded Evidence

          In his first
issue, Shunta asserts the trial court erred by excluding portions of Fogarty’s
and Shunta’s affidavits and by excluding evidence demonstrating that Toups paid
Westergren’s attorney’s fees in the underlying lawsuit.

          We review a
trial court’s decision to admit or exclude evidence for an abuse of
discretion.  Owens-Corning Fiberglass
Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998).  “[I]n addition to showing an abuse of
discretion, a party complaining of error in the exclusion of evidence must also
show that the trial court’s error was reasonably calculated to cause, and
probably did cause, the rendition of an improper judgment.”  Madison
v. Williamson, 241 S.W.3d 145, 151 (Tex. App.—Houston [1st Dist.] 2007,
pet. denied) (quoting City of Brownsville
v. Alvarado, 897 S.W.2d 750, 753 (Tex. 1995) and citing Tex. R.
App. P. 44.1(a)(1)).  In our
review of the summary judgment in this case, we consider all of the evidence Shunta
presented to determine if he raises a fact question on his claims.  Id.  If the evidence, including the excluded evidence,
does not raise a fact issue, then any abuse of discretion in the trial court’s
exclusion of evidence is harmless.  Id.

Summary Judgment Standard of Review

          We
review summary judgments de novo.  Valence
Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).  A matter-of-law summary judgment is proper
only when the movant establishes that there is no genuine issue of material
fact and that the movant is entitled to judgment as a matter of law.   Tex.
R. Civ. P. 166a(c).  The motion
must state the specific grounds relied upon for summary judgment.  Id. 
In reviewing a matter-of-law summary judgment, we must indulge every
reasonable inference in favor of the nonmovant, take all evidence favorable to
the nonmovant as true, and resolve any doubts in favor of the nonmovant.  Valence, 164 S.W.3d at 661.

          In a
no-evidence summary judgment, the movant represents that no evidence exists as
to one or more essential elements of the nonmovant’s claims, upon which the
non-movant has the burden of proof at trial.  
Tex. R. Civ. P.
166a(i).  The nonmovant then must present
evidence raising a genuine issue of material fact on the challenged
elements.  Id.  A no-evidence summary judgment is essentially
a pretrial directed verdict.  Bendigo
v. City of Houston, 178 S.W.3d 112, 113 (Tex. App.—Houston [1st Dist.]
2005, no pet.).  A fact issue exists if
the evidence “rises to a level that would enable reasonable and fair-minded
people to differ in their conclusions.”  King
Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003) (quoting Merrell
Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997)).  If the evidence does no more than create a
mere surmise or suspicion of fact, less than a scintilla of evidence exists,
and summary judgment is proper.  See Transp.
Ins. Co. v. Faircloth, 898 S.W.2d 269, 278 (Tex. 1995); Macias v.
Fiesta Mart, Inc., 988 S.W.2d 316, 317 (Tex. App.—Houston [1st Dist.] 1999,
no pet.).  A respondent is not required
to marshal its proof to defeat a no-evidence motion for summary judgment; it
need only point out evidence that raises a fact issue on the challenged
elements.  Tex. R. Civ. P. 166a(i) cmt. (1997).

          When, as
here, a summary judgment does not specify the grounds on which it was granted,
we affirm the judgment if any one of the theories advanced in the motion is
meritorious.  Joe v. Two Thirty Nine
Joint Venture, 145 S.W.3d 150, 157 (Tex. 2004).




 

Standing

          In his second
issue, Shunta asserts the trial court erred by granting summary judgment on the
ground that Shunta lacked standing to bring this suit.  The defendants moved for summary judgment on
the basis that Shunta lacked standing, asserting, “To have standing to assert a
claim based on tortious interference with contract, the plaintiff must be a
party to that contract or a third party beneficiary.”   Shunta asserts that the contract between
Fogarty and La Porte contained a provision that entitled him to a commission
for the sale of the property.  None of
the defendants address this ground on appeal.

          The Texas Occupations
Code provides,

A person may not
maintain an action in this state to recover a commission for the sale or
purchase of real estate unless the promise or agreement on which the action is
based, or a memorandum, is in writing and signed by the party against whom the
action is brought or by a person authorized by that party to sign the document.

 

Tex. Occ. Code Ann. § 1101.806(c) (Vernon 2009). 
To comply with this section, an agreement must: (1) be in writing and
must be signed by the person to be charged with the commission; (2) promise
that a definite commission will be paid, or must refer to a written commission
schedule; (3) state the name of the broker to whom the commission is to be
paid; and (4) either itself or by reference to some other existing writing,
identify with reasonable certainty the land to be conveyed.  Lathem
v. Kruse, 290 S.W.3d 922, 925 (Tex. App.—Dallas 2009, no pet.).  Here, the summary judgment evidence includes
the earnest money contract between La Porte and Fogarty.  That contract is in writing and lists Shunta
as the broker “act[ing] as intermediary between Seller and Buyer.”  The contract also provides Shunta’s fee will
be “6% of the total Sales Price.”  The
contract provides La Porte will pay the fee and the contract is signed by La
Porte.  The contract also identifies the
property at issue.  Thus, the undisputed
summary judgment evidence shows Shunta had a written commission agreement.  We conclude Shunta has standing to sue for
tortious interference with this agreement. 
See Northborough Corporate Ltd. P’ship, L.L.P. v. Cushman & Wakefield
of Tex., Inc., 162 S.W.3d 816, 821 (Tex. App.—Houston [14 Dist.],
2005) (holding commission agreement in writing signed by party charged with
paying commission satisfied section 1101.806(c)).  We sustain Shunta’s second issue.     

Statute of Limitations

          In his
seventh issue, Shunta asserts the trial court erred by granting summary
judgment on the ground that Shunta’s suit was barred by the statute of
limitations. A party
moving for summary judgment on the basis of an affirmative defense, such as
limitations, must conclusively establish the defense. See KPMG Peat Marwick
v. Harrison County Hous. Fin. Corp.,
988 S.W.2d 746, 748 (Tex. 1999).  If the movant establishes the defense, the
nonmovant must then provide summary judgment proof raising a fact issue in
avoidance of the defense.  Id.   

          A.      Accrual
of Cause of Action for Tortious Interference

          The statute
of limitations for tortious interference with contract is two years.  Mellon
Serv. Co. v. Touche Ross & Co., 17 S.W.3d 432, 435 n.1 (Tex.
App.—Houston [1st Dist.] 2000, no pet.) (citing First Nat’l Bank of Eagle Pass v. Levine, 721 S.W.2d 287, 289 (Tex.
1986)).  Here, Westergren filed his suit
and notice of lis pendens on July 9, 2004 and served Fogarty on July 29,
2004.  The defendants contend limitations
began to run on filing of this suit and expired on July 9, 2006.   Shunta contends that limitations did not
begin to run until Fogarty was served with the suit and notice of lis pendens
and, therefore, limitations did not expire until July 29, 2006.  Shunta filed this suit on July 14, 2006, more
than two years after the filing of Westergren’s suit and notice of lis pendens,
but less than two years from the date Fogarty was served.   

          The statute
of limitations begins to run when the cause of action accrues.  Waxler
v. Household Credit Servs., Inc., 106 S.W.3d 277, 279 (Tex. App.—Dallas
2003, no pet.) (citing Tex. Civ. Prac. & Rem. Code Ann. § 16.003 (Vernon Supp.  2009)). 
Determining when a cause of action accrues is a question of law.  Id.   “Because the statute does not define or
specify when accrual occurs, we look to the common law to determine when a
cause of action accrues.”  Id. (citing KPMG Peat Marwick v. Harrison County Hous. Fin. Corp., 988 S.W.2d
746, 750 (Tex. 1999)).

          The first
step in ascertaining when the statute of limitations begins to run in a tort
action is to determine whether the act causing the damage constitutes a legal injury.
 Burke
v. Ins. Auto Auctions Corp., 169 S.W.3d 771, 776 (Tex. App.—Dallas 2005,
pet. denied) (citing Waxler, 106
S.W.3d at 280).  “In most cases, a cause
of action accrues when a wrongful act causes a legal injury, regardless of when
the plaintiff learns of that injury or if all resulting damages have yet to
occur.”  S.V. v. R.V., 933 S.W.2d 1, 4 (Tex. 1996); see Burke, 169 S.W.3d at 776. 
However, if the act complained of does not, by itself, constitute a
legal injury, the cause of action accrues when the damages are sustained.  Id.;
see also Snell v. Sepulveda, 75 S.W.3d 142, 143–44 (Tex. App.—San Antonio
2002, no pet.) (stating cause of action accrues when “a wrongful act causes
some legal injury, even if the fact of injury is not discovered until later”).

          Shunta
asserts that Westergren filing suit did not injure him because, until Fogarty
was served with the suit, he remained willing to close on the property, which
would have entitled Shunta to receive his commission.  In Snell
v. Sepulveda, Sepulveda, an attorney, signed clients and began working on
their case, including settlement negotiations with an insurance company. 75 S.W.3d
at 143.  On January 8, 1996, Snell,
another attorney signed the clients.  Id. 
Snell settled the clients’ case on January 19, 1996.  Id.  Sepulveda filed suit against Snell for
tortious interference with contract on January 20, 1998, claiming it was filed
within two years because January 19, 1998 was a legal holiday.  Id.
at 143.   Sepulveda asserted he did not
discover Snell had interfered with his contract until he learned of the
contract, sometime after January 8, 1996. 
Id.  The court of appeals held the legal injury
occurred when Snell signed the clients “in derogation of Sepulveda’s
contractual rights,” even though Sepulveda did not learn of the fact of injury
until later.  Id. at 144 (citing S.V.,
933 S.W.2d at 4).     

          Here, the
filing of the suit and the accompanying lis pendens meant that La Porte could
not fulfill its contractual obligation to convey a clear title to Fogarty.  This, according to Shunta, is the reason
Fogarty backed out of the contract. 
Thus, the legal injury occurred when Westergren filed his suit and
notice of lis pendens.    The legal
injury in this case occurred on July 9, 2004. 
See id. at 144.  Although Shunta contends he had no knowledge
of Westergren’s filing of his suit and notice of lis pendens until Fogarty was
served, actual knowledge is not required. 
See S.V., 933 S.W.2d at
4.  Furthermore, the filing of notice of
lis pendens constitutes constructive notice of the suit.  See
Tex.
Prop. Code Ann. §
13.004 (Vernon 2004) (“A recorded lis pendens is notice to the world of its
contents.  The notice is effective from
the time it is filed for record, regardless of whether service has been made on
the parties to the proceeding.”).  More
than two years after the legal injury and more than two years after the notice
provided by the filing of the lis pendens, on July 14, 2006, Shunta filed this
suit.  Accordingly, Shunta’s claim for
tortious interference with contract is barred by the two year statute of
limitations, unless it was deferred by fraudulent concealment.  See id.

          B.      Discovery
Rule and Fraudulent Concealment

          In the
alternative, Shunta contends the discovery rule applies and the statute of
limitations was deferred until he learned of Westergren’s lawsuit when Fogarty
was served on July 29, 2004.  The discovery
rule is a very limited exception to the statute of limitations and is construed
strictly.  See Computer Assocs. Int’l, Inc. v. Altai, Inc., 918 S.W.2d 453,
455 (Tex. 1996).  The discovery rule
applies when “the nature of the injury incurred is inherently undiscoverable
and the evidence of injury is objectively verifiable.”  Id.
at 456.  The supreme court has noted that
the discovery rule has been stated to include delayed accrual of a cause of
action based on fraud or fraudulent concealment, but that there is actually a
distinction between the two concepts.  S.V. v. R.V., 933 S.W.2d 1, 4 (Tex.
1996).  Here, Shunta does not assert that
his injury is inherently undiscoverable, but that accrual of his cause of
action should be delayed due to Westergren’s fraudulent concealment.  We therefore address the issue of fraudulent
concealment and not the discovery rule.

          In fraudulent
concealment cases, “accrual is deferred because a person cannot be permitted to
avoid liability for his actions by deceitfully concealing wrongdoing until
limitations has run.”  Id. at 6.  A party asserting fraudulent concealment as
an affirmative defense to the statute of limitations has the burden to raise it
in response to the summary judgment motion, and to come forward with summary
judgment evidence raising a fact issue on each element of the fraudulent
concealment defense.  Mellon Serv. Co., 17 S.W.3d at 436
(citing American Petrofina, Inc. v. Allen,
887 S.W.2d 829, 830 (Tex. 1994)).  The
party must produce evidence establishing the defendant had (1) actual knowledge
of the wrong; (2) a duty to disclose the wrong; and (3) a fixed purpose to
conceal the wrong.  Id. (citing Casey v.
Methodist Hosp., 907 S.W.2d 898, 903 (Tex. App.—Houston [1st Dist.] 1995,
no writ)); see Ryland Group, Inc. v. Hood,
924 S.W.2d 120, 121 (Tex. 1996) (holding that once defendant established its
statute of limitations defense as a matter of law, plaintiff had burden to
prove fact issue concerning fraudulent concealment to defeat summary
judgment).  

          Shunta
contends that accrual of his cause of action for tortious interference with
contract claim should be delayed because Westergren “requested Fogarty to give
him thirty days to negotiate a new deal with La Porte but never did attempt to
do so and instead hired a lawyer to file [s]uit.”  However, the evidence introduced by Shunta to
support this contention is Fogarty’s affidavit. 
In his affidavit, Fogarty states that, after Westergren failed to close
on June 19, 2004, Westergren “requested I give him a few days to see if he
could get the deal closed.  I agreed to
do so and waited about a month.  I never
heard back from Gordon Westergren after that meeting regarding his efforts to
obtain a new contract or option to purchase the Property.”  Shunta does not explain how Westergren’s
request for “a few days” to try and close the deal on the property is evidence
that Westergren “deceitfully conceal[ed] wrongdoing until limitations
ran.”  Furthermore, Shunta does not
assert that Westergren had a duty to disclose the wrong or identify any
evidence of such a duty.  Because Shunta
has not come forward with evidence of each element of his fraudulent
concealment defense, the trial court did not err by rendering summary judgment
in favor of the defendants on limitations ground.  See Mellon
Serv. Co., 17 S.W.3d at 436 (stating burden of coming forward with evidence
of fraudulent concealment is on party asserting that fraudulent concealment
deferred running of statute of limitations).

          We overrule
Shunta’s seventh issue.  We need not
address Shunta’s third, fourth, fifth, sixth, or ninth issues, which concern
alternate grounds supporting the trial court’s rendition of summary judgment on
Shunta’s claim for tortious interference with contract.  See
Joe, 145 S.W.3d at 157.

No-Evidence Summary Judgment on Conspiracy Claim

          In his eighth
issue, Shunta asserts the trial court erred by granting summary judgment on the
ground that Shunta produced no evidence of his civil conspiracy claim.  The elements of civil conspiracy are        (1) two or more people; (2) an object to
be accomplished; (3) a meeting of the minds on the object or course of action;
(4) one or more unlawful, overt acts; and (5) damages as a proximate
result.  Tri v. J.T.T., 162 S.W.3d 552, 556 (Tex. 2005); see also Juhl v. Airington, 936 S.W.2d
640, 644 (Tex. 1996) (merely proving joint intent to engage in conduct that
resulted in injury not sufficient; civil conspiracy requires specific intent to
agree to accomplish unlawful purpose or to accomplish lawful purpose by
unlawful means).  In their motions for
summary judgment, the defendants moved for summary judgment on the grounds that
Shunta has no evidence “that 2 or more people conspired to do anything” and
that there was no evidence of “a meeting of the minds.”

          Shunta
asserts he provided some evidence of a meeting of the minds.  Shunta acknowledges that Toups testified that
he advised Westergren not to file the suit. 
Shunta also points to Westergren’s testimony that Toups neither
encouraged nor discouraged him from filing suit.  Shunta, however, does not explain how this
discrepancy shows a meeting of the minds between Westergren and Toups.   

          Instead,
Shunta contends, “That Toups encouraged Westergren to sue Fogarty and La Porte
is substantiated by other evidence in the record.”  Specifically, Shunta states,

          Westergren and Toups had discussions
and/or agreements to venture a partnership in connection with Defendant
Westergren’s purchase of the property. 
After Westergren’s option expired but before Westergren filed his
lawsuit, Toups and Westergren discussed the names of lawyers to hire, Toups
recommended Robert Bruce Langston, Toups attended a meeting with Westergren at
Langston’s law office where the filing of a lawsuit against Fogarty and La
Porte was discussed, Toups furnished documents for the meeting, and Toups paid
a portion of Westergren’s attorney’s fees in the lawsuit.  Toups did not disclose to La Porte (his
principal) that he had met with Westergren and Langston about suing La Porte
and Fogarty.  Toups, of course, had the
motive to aid Westergren because he was at risk of losing a sizable commission
if Fogarty had purchased the property.

          In accordance with [his October 6,
2004] contract, Toups testified he had made arrangements for Westergren to
dismiss the lawsuit and lis pendens “shortly after he filed it.”  When asked if obtaining Westergren’s consent
was ever an issue, Toups further testified: “Not in my mind.”  Toups and Westergren had previously had a
discussion about Westergren acting as a consultant in the event DT Properties
purchased the property.  Toups expected
Westergren wanted an agreement to be the consultant and a limited partner in
the venture that would ultimately purchase the property from DT
Properties.  Westergren ultimately agreed
to dismiss his lawsuit on the condition that Fogarty “totally disappeared.”

          Accordingly, the court should reverse
and remand the summary judgment order because there [is] more than a scintilla
of evidence of civil conspiracy.

 

(Citations to the record omitted).

          Shunta
contends the above is some evidence of civil conspiracy, citing to Transport Insurance Company v. Faircloth,
898 S.W.2d 269 (Tex. 1995) and Schlumberger
Well Surveying Corp. v. Nortex Oil & Gas Corp., 435 S.W.2d 854 (Tex.
1968).  In Faircloth, Faircloth brought civil conspiracy claims against
Transport Insurance Company, her guardian, and her attorney in connection with
the settlement of her wrongful death claims when she was a minor.  Faircloth,
898 S.W.2d at 272.  Within hours of
Faircloth’s parents’ death, an insurance adjustor for Transport began working
to settle any potential claim.  Id. 
Either the day of the accident or the next day, the adjustor contacted
Faircloth’s guardian and recommended attorneys to him.  Id.
at 278.  The guardian hired an attorney
who had not been among those recommended by the adjustor.  Id.  The attorney admitted that he had never
handled a wrongful death claim like Faircloth’s, that he did not independently
investigate the accident, and that he needed money.  Id.
at 279.  Faircloth’s guardian telephoned
the adjustor to ask her to explain the difference between a structured
settlement and a lump sum payment.  Id. 
The adjustor also met with the guardian and attorney at the guardian’s
home.  Id.  The claim was settled
and approved by the probate court within three weeks of the accident.  Id.  The supreme court held the above was no
evidence that Transport was aware of the attorney’s financial situation or that
the guardian may have planned to profit improperly from Faircloth’s
guardianship.  Id.  The supreme court noted
there was no evidence Trasnport “committed, or was aware of, any unlawful
act.”  Id.

          In Schlumberger, Schlumberger Well
Surveying was charged with conspiracy in connection with oil wells that had
been deviated from a normal vertical course in order to bottom the wells beyond
lease lines and wrongfully take the oil of the neighboring owners.  435 S.W.2d at 855.  The supreme court assumed that Schlumberger
“had good reason to believe that the conspiracy existed as alleged by Nortex,
and that the existence and object of the conspiracy could have been discovered
by the exercise of the slightest degree of diligence.”  Id.
at 857.  Schlumberger knew the wells at
issue deviated from a normal vertical course. 
Id. at 856.  Schlumberger also “took steps calculated to
protect its customers who might be subject to investigation or to prosecution
for drilling illegally deviated wells and producing oil therefrom.”  Id.  Schlumberger developed billing procedures
that did not show the depth of the wells, which information was shown to its
accounting department on separate paper that could be destroyed.  Id.  When an investigation began, Schlumberger
“advised its employees to have poor memories.” 
Id. Schlumberger also
destroyed “a valuable library of logs” that would have shown the depth of many
of the wells.  Id.  The supreme court held
this was no evidence that Schlumberger had actual knowledge that the wells had
been drilled to wrongfully produce oil from adjacent leases, and, therefore, no
evidence that Schlumberger was involved in a civil conspiracy.  Id.  

          Shunta cites King v. Acker, 725 S.W.2d 750 (Tex.
App.—Houston [1st Dist.] 1987, no writ), for the proposition that “[b]ecause of
its nature, proof of a conspiracy usually must be made by circumstantial
evidence.”  However, in Faircloth, the Texas supreme court noted
that, while circumstantial evidence may be used to establish a material fact,
“it must constitute more than mere suspicion.” 
Faircloth, 898 S.W.2d at
278.  The supreme court also stated that
in cases with meager circumstantial evidence, if circumstances are consistent
with either of two facts, neither fact can be inferred.  Id.  Similarly, in Schlumberger, the supreme court stated that, although proof of a
conspiracy “may be, and usually must be” made by circumstantial evidence, a
vital fact may not be proved by “piling inference upon inference.”  Schlumberger,
435 S.W.2d at 858.

          In this case,
the evidence cited by Shunta does not show Toups and Westergren had a “meeting
of the minds” to accomplish an unlawful purpose or to accomplish a lawful
purpose by unlawful means.  At most,
there is some evidence that Toups knew Westergren would file suit, not that
Toups knew the filing of suit was an unlawful act or a lawful act that was
intended to accomplish an unlawful purpose or that Toups had the specific
intent to agree to accomplish an unlawful purpose or to accomplish a lawful
purpose by unlawful means.  See Juhl, 936 S.W.2d at 644; see also Chu v. Hong, 249 S.W.3d 441,
446 (Tex. 2008) (“Chu could only be liable for conspiracy if he agreed to the
injury to be accomplished; agreeing to the conduct ultimately resulting in
injury is not enough.”).   In addition,
one fact Shunta stresses in support of his claim for civil conspiracy is
Toups’s payment of a portion of Westergren’s attorney’s fees.  However, Shunta acknowledges in his brief
that the payment was made in satisfaction of a pre-existing debt Toups owed to
Westergren. Toups paid Westergren’s attorney directly, rather than paying
Westergren, who would in turn pay his attorney. 
We conclude the evidence identified by Shunta is no evidence that Toups
and Westergren had a meeting of the minds to tortiously interfere with the
contract that included Shunta’s commission. 
We also conclude there is no evidence concerning a conspiracy involving
either DT Properties or Grubb & Ellis. 
We overrule Shunta’s eighth issue. 
Having considered all the evidence, including the evidence Shunta
asserts was erroneously excluded, in determining the trial court properly
rendered summary judgment, we also conclude that the error, if any, in
excluding the evidence was harmless, and overrule Shunta’s first issue.  See
Madison, 241 S.W.3d at 151.

Conclusion

          We affirm the
judgment of the trial court.

 

 

                                                                   Elsa
Alcala

                                                                   Justice


 

Panel consists of Chief Justice
Radack and Justices Alcala and Higley.

 











[1]           A lis pendens may be filed by a party
seeking affirmative relief in an action involving title to, an interest in, or
an encumbrance against real property.  Tex. Prop. Code Ann. § 12.007(a)
(Vernon Supp. 2009).   Generally
speaking, the purpose of lis pendens notice is twofold: (1) to protect the
filing party’s alleged rights to the property that is in dispute in the
lawsuit, and (2) to put those interested in the property on notice of the
lawsuit.   World Sav. Bank, F.S.B. v. Gantt, 246 S.W.3d 299, 303 (Tex.
App.—Houston [14th Dist.] 2008, no pet.).